FILED
United States Court of Appeals
Tenth Circuit

May 26, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellant/
  Cross-Appellee,

v.

CLIFTON BRETT BENNETT,

  Defendant-Appellee/
  Cross-Appellant.

Nos. 14-1384 and 14-1402

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:13-CR-00395-CMA)**

---

William A. Glaser, Appellate Section, Criminal Division (Leslie R. Caldwell, Assistant Attorney General, and Sung-Hee Suh, Deputy Assistant Attorney General, Appellate Section, Criminal Division, United States Department of Justice, and John F. Walsh, United States Attorney, and Robert M. Russel, Chief, Appellate Section, United States Attorney's Office, Denver, Colorado, with him on the briefs), United States Department of Justice, Washington, DC, for Appellant/Cross-Appellee.

Dean Sanderford, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs) Office of the Federal Public Defender, Denver, Colorado, for Appellee-Cross-Appellant.

---

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

Clifton Bennett pleaded guilty to federal child pornography charges and the district court sentenced him to fifty-seven months of imprisonment to be followed by several conditions of supervised release. Bennett and the United States each contend the district court erred at sentencing.

The government argues the court should have found Bennett had a prior Colorado conviction relating to child pornography, which would trigger a ten-year mandatory minimum sentence under 18 U.S.C. § 2252A(b)(2). We agree that Bennett's prior Colorado misdemeanor conviction for sexual exploitation of a child "relates to" child pornography, and he is therefore eligible for the mandatory minimum.

Bennett also appeals, challenging the district court's imposition of a special condition of supervised release that requires he undergo mandatory testing for sexual attraction to minors. But we are faced with too many speculative factors, too far in the future, to make a decision sounding in constitutional principles, so we dismiss Bennett's cross-appeal without prejudice on ripeness grounds.

## I. Background

The United States Postal Inspection Service searched Clifton Bennett's Colorado Springs apartment and discovered thousands of images of child pornography and child erotica, featuring boys ranging from toddlers through

young teenagers. Bennett pleaded guilty to knowingly possessing child pornography under 18 U.S.C. § 2252A(a)(5)(B).[1]

This was not Bennett's first conviction for sex-related conduct involving children. In 1997, he pleaded guilty to sexual exploitation of a child, a misdemeanor under Colorado law, and was sentenced to 140 days in jail.

Based on this prior conviction, the parties disagreed whether federal law required a ten-year mandatory minimum under 18 U.S.C. § 2252A(b)(2). Looking at the Colorado statute, the district court concluded that because the Colorado law punished a broader range of activities than the federal crime of possession of child pornography, the prior conviction is not a child pornography offense for statutory purposes. The court sentenced Bennett to fifty-seven months of imprisonment and ten years of supervised release.

---

[1] Subsection (a)(5)(B) provides:

> Any person who . . . *knowingly possesses*, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of *child pornography* that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce of in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b).

18 U.S.C. § 2252A(a)(5)(B) (emphasis added).

At sentencing, Bennett also objected to the condition of supervised release that required him to undergo a test for sexual attraction to minors using a device called a penile plethysmograph.[2] The district court rejected this challenge and concluded:

> I have sufficient concern for the young men – the under-age men in the community, that I think that in this particular case, to effectively supervise and treat the defendant, and to protect the community; in particular, these young boys from additional crimes by the defendant, that both the computer internet access limitation and the proposed sex offender evaluation treatment condition of supervised release, which would include, if necessary, plethysmograph examination, does comport with the statutory requirements of 18 United States Code Section 3583(d) and are appropriate in this case.

R., Vol. III, at 27.

## II. Discussion

We first discuss whether Bennett's prior state misdemeanor conviction triggers the mandatory minimum enhancement. We conclude it does. We then turn to the special condition requiring plethysmograph testing, and conclude that the imposition of testing is too speculative at this point for us to consider

---

[2] "Penile plethysmograph testing is a procedure that 'involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses.'" *United States v. Weber*, 451 F.3d 552, 554 (9th Cir. 2006) (quoting Jason R. Odeshoo, *Of Penology and Perversity: The Use of Penile Plethsmography on Convicted Child Sex Offenders*, 14 Temp. Pol. & Civ. Rts. L. Rev. 1, 2 (2004)).

Bennett's due process challenge.  He can challenge the testing if and when it is actually imposed.

### A.  Mandatory Minimum Enhancement

Under 18 U.S.C. § 2252A(b)(2), the mandatory minimum applies if Bennett's prior conviction *relates to* a variety of state sexual abuse and child pornography crimes:

> Whoever violates . . . subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years, or both, but . . . if such person has a prior conviction . . . under the laws of any State *relating to* aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, *possession*, receipt, mailing, sale, distribution, shipment, or transportation *of child pornography*, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

18 U.S.C. § 2252A(b)(2) (emphasis added).[3]  The district court determined whether the prior Colorado conviction counted for enhancement purposes using the so-called categorical approach.

### 1.  Categorical Approach

The government argues that under the categorical approach Bennett's 1997 Colorado conviction for sexual exploitation of a child qualifies as a prior conviction relating to the possession of child pornography.  Under this assessment, it contends the court may only consider whether the *elements* of the

---

[3]  The enhancement also applies if the defendant has a prior federal conviction under "this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10[.]"  18 U.S.C. § 2252A(b)(2).

Colorado statute categorically relate to the possession of child pornography. Bennett disagrees that the categorical approach applies. He contends that our decision *United States v. McCutchen*, 419 F.3d 1122 (10th Cir. 2005), requires that we must find his prior *conduct* actually relates to the possession of child pornography. And because the limited record does not disclose his prior conduct, we could not make that determination.

But a careful reading of *McCutchen* confirms that the proper analytical framework begins with the categorical approach. In *McCutchen*, the defendant pleaded guilty to knowing possession of child pornography under 18 U.S.C. § 2252(a)(2)[4] and (1)(4)(B). 419 F.3d at 1123. McCutchen had a prior conviction—a guilty plea for sexual battery under Kansas law. The question was whether that prior conviction related to abusive sexual conduct *involving a minor*. Although sexual battery could be committed against children or adults, McCutchen had in fact abused an eight-year-old. *Id.* at 1124. The district court found that where the statutory language of the prior conviction was broad enough to encompass crimes that would trigger the enhancement and crimes that would not, it was allowed to look beyond the elements of the offense. *United States v. McCutchen*, No. 04-10140-01, at 4 (D. Kan. Dec. 15, 2004), *aff'd*, 419 F.3d 1122 (10th Cir. 2005).

_____

[4] The enhancement under 18 U.S.C. § 2252(a)(2) contains relevant language identical to the language here.

-6-

We affirmed the district court. In doing so, we "reject[ed] the narrow categorical approach to application of § 2252(b)(2) *advocated by McCutchen*." *McCutchen*, 419 F.3d at 1127 (emphasis added). But we did not upset the general presumption that the categorical approach applies.[5] Rather, we merely rejected the notion that courts must focus "exclusively" on the elements of the prior conviction and are confined "solely" to the elements of the statute. *Id.* at 1126–27. We found "no basis" to require sentencing courts to "focus exclusively on the elements of a defendant's prior state conviction in determining whether such conviction triggers application of the sentence enhancement provisions." *Id.* at 1126.

Thus, in applying § 2252A(b)(2) we start with the categorical approach, even if we do not end there. Consequently, we first ask whether the language of the prior conviction categorically triggers the enhancement. If not, we may proceed beyond the categorical approach if two pre-requisites are met. First, we must have access to court documents such as those approved of in *Shepard v. United States*, 544 U.S. 13 (2005), that demonstrate the elements of the crime the defendant committed. Second, the statute of prior conviction must be divisible,

---

[5] In *McCutchen*, the government and the defendant both agreed that "courts generally appl[y] a categorical approach" in determining whether a defendant's prior conviction triggers the mandatory minimum. *McCutchen*, No. 04-10140-01, at 3. The government merely argued that the court go beyond the statute "*if* the statute or conviction is ambiguous or broader than the definitions in 2252(b)(2) . . . ." *Id.* (emphasis added).

*Descamps v. United States*, 133 S. Ct. 2276, 2282 (2013), meaning the statute lists alternative ways it may be violated.

Other circuits apply a similar approach. For example, in applying § 2252(b)(2), the Ninth Circuit explained that a court may apply a modified categorical approach if (1) the statute of prior conviction criminalizes more conduct than the federal triggering offense, and (2) the statute of prior conviction is divisible. *United States v. Sullivan*, 797 F.3d 623, 635 (9th Cir. 2015), *petition for cert. filed*, (Jan. 26, 2016) (No. 15-7875)) (applying the categorical approach in interpreting § 2252(b)(2) but clarifying that a modified categorical approach is appropriate where the prior criminal conviction language is both broad and divisible). Likewise, the Fourth Circuit starts with the categorical approach in determining whether a prior conviction relates to sexual abuse or abusive sexual conduct involving a minor. *United States v. Colson*, 683 F.3d 507, 509 (4th Cir. 2012) (applying the categorical approach in interpreting § 2252A(b)(1) because no *Shepard* documents were available). While the Fourth Circuit allows the sentencing court to consider *Shepard* documents to "reveal the facts on which the conviction necessarily rested," if no such documents are available, the sentencing court may look only to the statutory language of the prior conviction to determine whether that conviction was related to the triggering offenses.[6]

---

[6] *See also United States v. Davis*, 751 F.3d 769 (6th Cir. 2014) (applying the categorical approach in interpreting § 2252A(b)(2) and explicitly rejecting a
(continued...)

Similarly here, we have no facts beyond the guilty plea.  As a result, we apply the categorical approach.

### 2.  Relating To Child Pornography

We next examine the statutory definition of Bennett's 1997 Colorado conviction to determine whether it categorically qualifies as an offense relating to the possession of child pornography. The relevant Colorado statute provided:

> A person commits sexual exploitation of a child if, for any purpose, he knowingly . . . Possesses or controls any sexually exploitative material for any purpose . . . ."[7]

Colo. Rev. Stat. § 18-6-403(3)(b.5) (1995) (footnote added).  The statute thus triggers the mandatory minimum if it is a statute "*relating to* . . . the production,

---

[6](...continued)
factual approach); *United States v. Simard*, 731 F.3d 156, 162 (2d Cir. 2013) (applying the categorical approach in interpreting § 2252(b)(2) and clarifying that the modified categorical approach would have been appropriate with a divisible statute); *United States v. Linngren*, 652 F.3d 868 (8th Cir. 2011) (applying the categorical approach in interpreting § 2252(b)(1) but using *Shepard* documents because the statute of the prior conviction was broad); *United States v. Galo*, 239 F.3d 572 (3d Cir. 2001) (applying the categorical approach in interpreting § 2251(d)).

[7] "Sexually exploitative material" is visual material that "depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." Colo. Rev. Stat. § 18-6-403(2)(j).  Explicit sexual conduct can be "sexual intercourse, erotic fondling, erotic nudity, masturbation, sadomasochism, or sexual excitement." § 18-6-403(2)(e).  Relevant here, erotic nudity can include "the human breasts, or the undeveloped or developing breast area of the human child, for the purpose of real or simulated overt sexual gratification[.]" § 18-6-403(2)(d).

possession, receipt, mailing, sale, distribution, shipment, or transportation of *child pornography*." 18 U.S.C. § 2252A(b)(2) (emphasis added).

The Colorado child exploitation statute may punish the possession of visual depictions that fall outside the federal definition of child pornography.[8] First, the Colorado statute, unlike the federal law, may punish possession of an image of a child whose breasts, but not genitals, are exposed. Second, the Colorado statute may punish possession of an image of a child observing, but not engaged in, sexually explicit conduct. In fact, the government concedes the statutes do not completely overlap. Principal Br. for United States 29. But a conviction qualifies as a predicate conviction if it *relates to* the possession of child pornography.

We have held, as have the other circuits, that "relating to" has a broadening effect on § 2252A. *Colson*, 683 F.3d at 511–12 ("Numerous courts of appeals agree that Congress chose the expansive term 'relating to' in § 2252A(b)(1) to ensure that individuals with a prior conviction bearing some relation to sexual abuse, abusive conduct involving a minor, or child pornography receive enhanced minimum and maximum sentences." (citations omitted)); *McCutchen*, 419 F.3d at

---

[8] Federal law defines "Child pornography" as any visual depiction that: was produced using a minor engaged in sexually explicit conduct, depicts a minor engaged in sexually explicit conduct, or appears as though an identifiable minor is engaged in sexually explicit conduct. 18 U.S.C. § 2256(8). "Sexually explicit conduct" includes graphic sexual intercourse, graphic or lascivious simulated masturbation, and graphic or simulated lascivious exhibition of the genitals or pubic area. 18 U.S.C. § 2256(8).

-10-

1126–27.[9]  Therefore we have applied the Supreme Court's ordinary interpretation of "relating to" from *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).  *See, e.g.*, *United States v. Becker*, 625 F.3d 1309, 1310 (10th Cir. 2010). Under this interpretation, "the offense need only 'stand in some relation to,' 'pertain to,' or 'have a connection' with" the possession of child pornography. *Becker*, 625 F.3d at 1312 (10th Cir. 2010) (quoting *McCutchen*, 419 F.3d at 1127).  Bennett's Colorado conviction meets these standards, and therefore "relates to" the possession of child pornography.

To counter, Bennett argues that the recent Supreme Court case, *Mellouli v. Lynch*, 135 S. Ct. 1980 (2015), has undermined our precedent and that of the other circuits.  In *Mellouli*, the Court held that a Tunisian citizen was not removable for his state drug paraphernalia offense because the state offense criminalized paraphernalia for substances beyond those contained on the federal list of controlled substances.  Bennett argues *Mellouli* mandates the enhancement here can only be triggered by a state child pornography statute punishing images that meet the federal definition of child pornography.  Bennett Supp. Br. at 1. This interpretation is incorrect for several reasons.

---

[9]  *See also Sullivan*, 797 F.3d at 637–38; *United States v. Allen*, 750 F.3d 209, 213 (2d Cir. 2014); *United States v. Spence*, 661 F.3d 194, 200 (4th Cir. 2011); *United States v. Weis*, 487 F.3d 1148, 1152 (8th Cir. 2007); *United States v. Hubbard*, 480 F.3d 341, 347 (5th Cir. 2007).

First, *Mellouli* was decided, not on the definition of "relating to," but on the particular removal statute's surrounding text and history. At issue in *Mellouli* was whether an alien's Kansas drug paraphernalia conviction triggered removal under the immigration laws, 8 U.S.C. § 1227(a)(2)(B)(i). The removal statute in question provided an alien can be removed if "convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country *relating to a controlled substance (as defined in section 802 of Title 21).*" *Id.* (emphasis added). The Kansas definition of controlled substances included at least nine substances that the federal list did not.[10] *Id.* The Supreme Court held that § 1227(a)(2)(B)(i) is limited to predicate convictions involving only those drugs defined in 21 U.S.C. § 802. *Id.* at 1990–91. In doing so, the Court acknowledged that "relating to" generally has a broadening effect. *Id.* at 1990. But, the Court explained, "relating to" cannot skew a statute beyond its breaking point. Relying on the "statute's text and history," it concluded that "relating to" should be read narrowly in the removal context. *Id.*

Here, neither the text nor the history of the enhancement statute, 18 U.S.C. § 2252A(b)(2), suggest Congress intended to reference only state child pornography offenses that match the federal child pornography offense in the

___

[10] The drug Mellouli was discovered with, Adderall, is a controlled substance under both federal and Kansas law. But the criminal complaint did not identify the substance, so the Supreme Court applied the categorical approach, looking only to the elements of the prior conviction.

same way Congress intended to reference only state drug offenses involving substances defined in § 802.

First, the enhancement statute does not limit "child pornography" by linking it to the federal definition. In fact, *Mellouli* explicitly noted that a broad reading of "relating to" would have made sense if Congress did not insert a qualification limiting its application to federal controlled substances. *Mellouli*, 135 S. Ct. at 1988 n.9 ("[T]he dissent shrinks to the vanishing point the words 'as defined in [§ 802].' If § 1227(a)(2)(B)(I) stopped with the words 'relating to a controlled substance,' the dissent would make sense. But Congress did not stop there. It qualified 'relating to a controlled substance' by adding the limitation 'as defined in [§ 802].'").

Additionally, a broad reading of the enhancement provision does not stretch it "to the breaking point," as it did to the removal statute in *Mellouli*. 135 S. Ct. at 1990. The removal statute requires only that the state law relate to a controlled substance, but mentions no actus reus. The Court took issue that a broad reading would mean the removal statute could reach any crime "associated with the drug trade in general." *Id.* at 1988 (quoting *In re Martinez Espinoza*, 25 I. & N. Dec. 118 (BIA 2009)). This concern was especially present for Mellouli, where an ordinary piece of clothing—a sock—qualified as drug paraphernalia, triggering deportation under a broad reading. *Id.* at 1983. Section 2252A(b)(2), by contrast, limits the triggering offenses through a universe of actions: "production,

-13-

possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." 18 U.S.C. § 2252A(b)(2). "Relating to" can therefore have a broadening effect without criminalizing all acts associated with child pornography in general.

Third, the structure of the removal statute emphasizes the need for complete overlap between state and federal predicate offenses in a way that § 2252A(b)(2) does not. The removal statute groups state and federal convictions together: "any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 802 of Title 21)." 8 U.S.C. § 1227(a)(2)(B)(i). Because federal law only reaches federally-defined substances, a narrow reading of "relating to" is required, or else "relating to" would have two meanings at once. In contrast, § 2252A(b)(2) does not group state and federal convictions together:

> a prior conviction under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography.

A narrow reading is therefore not required for coherence. In fact, the text points the opposite direction. If Congress had intended to reference only those state laws that punished federally-punishable conduct, it could have said so. *See, e.g.,* 18 U.S.C. § 3559(e)(2) (defining "state sex offense" as one that "consists of

-14-

conduct that would be a Federal sex offense"); 18 U.S.C. § 2426(b)(1)(B)

(defining "prior sex offense conviction" as an offense "consisting of conduct that

would have been an offense under [this chapter, chapter 109A, chapter 110, or

section 1591]").  The text of § 2252A(b)(2) does not favor a narrow reading of

"relating to."[11]

Our reading is further supported by the comparative historical backgrounds

of the statutes.  Under the deportation statute, Congress and the BIA had "long

required a direct link" to an exact list of federally defined drugs.  *Mellouli*, 135 S.

Ct. at 1990.  Bennett points to no historical background in favor of a narrow

reading of § 2252A(b)(2), because none exists.  We have already cited wide

agreement among the circuits that "relating to" is expansive in this context and

we see no reason to depart.

The post-*Mellouli* decisions align with our interpretation.  The Sixth,

Eighth, Ninth, and Eleventh Circuits have each affirmed that "relating to" remains

---

[11]  This reading is confirmed by *Lockhart v. United States*, 136 S. Ct. 958 (2016), where the Supreme Court found that state laws pertaining to sexual abuse satisfied the § 2252(b)(2) enhancement even if they did not involve a minor.  The Court acknowledged that Congress did not require total parity between federal and state predicate convictions.  Justice Kagan in dissent urged an interpretation that would have resulted in great disparity between federal and state triggering offenses under § 2252(b)(2).  *Id.* at 975 (Kagan, J., dissenting).  The dissent pointed out that many federal triggering offenses lacked state matches.  The majority responded that even though its reading yielded greater parity, its "construction of  § 2252(b)(2)'s sexual abuse predicates [did] not rely on a general presumption that Congress sought full parity between all the federal and state predicates in § 2252(b)(2)."  *Id.* at 966.

broad in this context.  *See United States v. Miller*, ___ F.3d ___, No. 15-13555,

2016 WL 1658671, at *3 (11th Cir. Apr. 27, 2016); *United States v. Sumner*, ___

F.3d ___, No. 15-1509, 2016 WL 1085751, at *3 (8th Cir. Mar. 21, 2016)

(affirming the broad interpretation of "relating to" from *United States v. Weis*,

487 F.3d 1148, 1152 (8th Cir. 2007)); *Sullivan*, 797 F.3d at 638–40 ("Because

neither context nor history tugs "in favor of a narrower reading," we define the

phrase "relating to" in § 2251(e) and § 2252(b)(2) broadly." (quoting *Mellouli*,

135 S. Ct. at 1990)); *United States v. Mateen*, 806 F.3d 857, 860–61 (6th Cir.

2015), *cert. denied*, No. 15-8467, 2016 WL 900281 (Apr. 18, 2016) ("While

enhancing a sentence for a prior federal offense under section 2252(b)(2) requires

an offender to commit a specified crime, including crimes listed in chapter 109A,

a prior state conviction requires only that the defendant have been convicted of a

state offense "relating to . . . sexual abuse." (quoting *United States v. Barker*, 723

F.3d 315, 322 (2d Cir. 2013)).

Because neither the text nor the history of the enhancement statute limits

triggering offenses to those mirroring federally-defined offenses, we apply the

ordinary interpretation of "relating to."  We ask whether the statute of Bennett's

1997 Colorado conviction stands in some relation to, pertains to, or has a

connection with the possession of child pornography.[12]  *See Becker*, 625 F.3d at

---

[12] Bennett more or less agrees "relating to" broadens the statute.  Bennett
Supp. Br. at 9.  But under his reading, the enhancement would be appropriately
(continued...)

1312. It undeniably does. The nature of sexual exploitation of a child, under Colorado law, is the possession of visual material depicting a child participating in explicit sexual conduct. We have little difficulty deciding that the statute relates to the possession of child pornography.[13]

Because Bennett's prior conviction categorically relates to the possession of child pornography, we conclude that the district court should have applied the ten-year mandatory minimum under 18 U.S.C. § 2252A(b)(2).

### B. Plethysmograph Testing

Bennett also argues the district court erred by imposing penile plethysmograph testing as a condition of his supervised release without sufficient findings. We must examine whether this challenge is ripe for review. *Friends of Marolt Park v. U.S. Dep't of Transp.*, 382 F.3d 1088, 1093 (10th Cir. 2004). The parties conceded ripeness, but "[a]s a jurisdictional prerequisite, ripeness may be examined by this court sua sponte." *Id.* (quoting *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1444 (10th Cir. 1997)).

---

[12](...continued)
triggered by, for example, "advertising or promoting" federally-defined child pornography. *Id.* There is no good reason why "relating to" would only expand the explicit list of acts associated with child pornography.

[13] This decision rests comfortably with other circuits' interpretations. For example, some courts have even found attempt crimes where the defendant believed he was dealing with a minor, regardless of the age of the victim, related to sexual abuse of a minor. *See United States v. Stults*, 575 F.3d 834, 845–46 (8th Cir. 2009); *United States v. Hubbard*, 480 F.3d 341, 347 (5th Cir. 2007).

The government based its concession of ripeness on *United States v. Mike*, 632 F.3d 686 (10th Cir. 2011). In *Mike*, we said "supervised release terms are directly appealable, despite the fact that they are subject to later modification, because they 'are part of the sentencing court's final orders.'" *Mike*, 632 F.3d at 692–93 (quoting *United States v. Smith*, 606 F.3d 1270, 1283 n.4 (10th Cir. 2010)). But ripeness doctrine has both constitutional and prudential components. *United States v. Vaquera-Juanes*, 638 F.3d 734, 735–36 (10th Cir. 2011). So while an appeal regarding the conditions of supervised release may satisfy the Article III component, that appeal may nonetheless be dismissed on prudential ripeness grounds.[14] *Id.* at 738 (dismissing appeal regarding conditions of supervised release on ripeness grounds because the defendant might be deported).

We have acknowledged that plethysmograph testing presents different considerations than other terms of supervised release. *See United States v. Dougan*, 684 F.3d 1030, 1036 (10th Cir. 2012) (recognizing that plethysmograph testing implicates significant liberty interests and requires a strong nexus to the defendant's history and characteristics before it can be imposed). So although supervised release terms may generally be directly appealed, we must inquire whether the prudential considerations here, especially related to plethysmograph testing, counsel restraint. They do.

---

[14] "[E]ven in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion." *Nat'l Park Hosp. Ass'n v. Dept't of Interior*, 538 U.S. 803, 808 (2003).

-18-

The Fifth, Sixth, and Seventh Circuits have dismissed immediate challenges to plethysmograph testing as unripe. *United States v. Ortega*, 485 F. App'x 656, 660 (5th Cir. 2012) (unpublished); *United States v. Rhodes*, 552 F.3d 624, 628 (7th Cir. 2009); *United States v. Lee*, 502 F.3d 447, 450 (6th Cir. 2007). The *Lee* court, for example, while recognizing that generally, "conditions of supervised release may be ripe for appellate review immediately following their imposition at sentence," still concluded the defendant's challenge to plethysmograph testing was not ripe because (1) the defendant would not be released for fourteen years, (2) his treatment plan was indefinite, and (3) the court was unsure whether plethysmograph testing would even be considered medically useful in 2021. *Lee*, 502 F.3d at 450. Similarly, the Seventh Circuit dismissed a challenge to plethysmograph testing as unripe where the condition would not have been imposed for at least eight and one-half years. *Rhodes*, 552 F.3d at 624. The court gave weight to the difficulty in requiring the district court to state why plethysmograph testing is appropriate for the particular defendant when the question would be "full of contingency and abstraction." *Id.* at 628.

The First Circuit, however, rejected a ripeness challenge when it struck down plethysmograph testing as a potential condition of supervised release in *United States v. Medina*, 779 F.3d 55, 66-67 (1st Cir. 2015). As here, the sentencing court in *Medina* approved sex offender treatment "including" plethysmograph testing. *Id.* at 64 n.7. The First Circuit rejected a ripeness

-19-

challenge because the condition would be imposed within the year, unlike the fourteen-year gap in *Lee*.  *Id.* at 67; *Lee*, 502 F.3d at 450.  Additionally, Medina did not challenge how the testing would be imposed, but rather that plethysmograph testing was per se unlawful on the record before the district court.  *Medina*, 779 F.3d at 67.

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81 (1985) (internal quotations omitted)).  Our prudential ripeness doctrine requires us to balance the fitness of the issue for judicial review with the hardship to the parties from withholding review.  *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (citation omitted).

Turning first to whether the issue is fit for judicial review, we focus on "whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed."  *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008)  (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)).  Bennett is not challenging the facial validity of penile plethysmograph testing, but rather its application to him.  He argues that the district court did not make sufficiently particularized factual findings to impose testing.  Even if we remanded, the district court would be faced with the nearly impossible task of determining how

effective plethysmograph testing might be for Bennett after completing his ten-year sentence. This factor weighs against review.

We next consider whether the parties face "a direct and immediate dilemma." *Stout*, 519 F.3d at 1118. Of course, this consideration would counsel against adjudication for most conditions of supervised release where the defendant has a lengthy sentence. But Bennett faces additional contingencies before plethysmograph testing would be imposed. First, the treatment provider must evaluate him and find that testing is appropriate. Second, plethysmograph testing must be available as a treatment option, a destiny far from certain. *See United States v. Lee*, 502 F.3d 447, 450 (1st Cir. 2007) (noting circuit agreement that penile plethysmograph testing is deeply invasive and of questionable reliability). And Bennett can challenge the condition when he is released from his ten-year sentence if testing is still considered an appropriate treatment option at that time.

In sum, we find the challenge to plethysmograph testing as not yet ripe. Bennett also raises issues of substantive due process, considering the invasive nature of the testing, but we need not reach that issue. Because Bennett's cross-appeal is not yet sufficiently concrete, we dismiss without prejudice.

## III.  Conclusion

For the foregoing reasons, we REMAND with instructions to the district court to VACATE the fifty-seven-month sentence and resentence Bennett to the ten-year mandatory minimum sentence.  We DISMISS Bennett's cross-appeal on ripeness grounds.

No. 14-1384, 14-1402, United States v. Bennett

**HARTZ**, Circuit Judge, concurring and dissenting:

I join the majority opinion except its holding that Bennett's sentence could be enhanced based on his conviction under Colorado's child-exploitation statute. On the application of the federal enhancement statute, I respectfully dissent because, as the majority opinion sets forth, the definition of *child pornography* in the Colorado statute is broader than the definition of the term in the federal enhancement statute. Following my understanding of the Supreme Court's decision in *Mellouli v. Lynch*, 135 S. Ct. 1980 (2015), I would hold that the Colorado statute is not a law "relating to… the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography," 18 U.S.C. § 2252A(b)(2).[1]

I agree with the majority that the term *related to* is broad language. But its interpretation must somehow be anchored to prevent it from drifting aimlessly. We should try to identify some feature a statute must possess to qualify under § 2252A(b)(2). In my view, *Mellouli* provides guidance on how to do that.

*Mellouli* considered an alien-removal (deportation) statute, which, like the enhancement statute here, referenced state laws "relating to" dealings with specifically defined materials. Under § 2252A(b)(2) the materials are "child pornography," which is defined for purposes of that section by 18 U.S.C. § 2256(8). In *Mellouli* the materials were specifically defined controlled substances. The federal statute made an alien

---

[1] I leave to another day whether we could apply the modified categorical approach to the Colorado statute.

removable if he was "convicted of a violation of… any law or regulation of a State, the United States, or a foreign country relating to a *controlled substance (as defined in section 802 of Title 21)*," 8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added). *Mellouli* did not limit what *activity* relating to controlled substances would be covered by the removal statute except that the activity could not relate to a substance other than a defined controlled substance. The enhancement statute at issue on this appeal similarly can be construed to include a great many activities relating to materials that are child pornography; it just should not be construed to include activities relating to materials that are not child pornography.

In *Mellouli* the problem was that the Kansas list of controlled substances was slightly larger than the federal list; it included at least nine substances that did not satisfy the definition in 21 U.S.C. § 802. The Supreme Court rejected the argument that the state list was so similar to the federal list that the state law was one "relating to a controlled substance (as defined in section 802 of Title 21)." It said that "the Government's construction of the federal removal statute stretches to the breaking point, reaching state-court convictions, like Mellouli's in which '[no] controlled substance (as defined in [§ 802])' figures as an element of the offense." *Mellouli*, 135 S. Ct. at 1990. "The Government," it said, "offers no cogent reason why its position is limited to state drug schedules that have a 'substantial overlap' with the federal schedules. A statute with *any* overlap would seem to be *related to* federally controlled drugs." *Id.* (citation omitted). Justice Thomas's dissent observed, fairly I think, that "[t]he majority *appears* to conclude that a statute 'relates to' a federally controlled substance if its definition of the offense of

2

conviction necessarily includes as an element of that offense a federally controlled substance." *Id.* at 1993 (emphasis and additional internal quotation marks omitted).

The parallel to the statute before us is obvious. Under the approach taken in *Mellouli*, it would not be enough that *almost* everything defined as child pornography under the Colorado statute is also child pornography under the federal statute; it would be required that the state offense on which Bennett was convicted necessarily include as an element some material that is child pornography under the federal definition.

Unlike the majority opinion, I do not read the Court's concern about stretching the scope of the statute to the "breaking point" as relating to the various *actions* involving controlled substances; its concern related solely to the substances involved. Also, I fail to see how it makes any difference that in the removal statute considered in *Mellouli* the relating-to provision explicitly cross-referenced a definition of *controlled substance*, whereas there is no explicit cross reference to a definition of *child pornography* in the enhancement statute before us. The explicit cross reference was necessary in the removal statute because the referenced definition was in a separate title of the United States Code; but there was no need for such a cross reference in the enhancement statute because the definition in the nearby section of the same chapter of the same title explicitly stated that it applied throughout the chapter. *See* 18 U.S.C. § 2256 ("For the purposes of this chapter," the listed terms are defined to have the following meanings). What was important is that there was an explicit federal definition of the term.

In addition, I am puzzled by the majority's argument that one ground supporting the *Mellouli* interpretation of *relating to* is that otherwise the reference in the removal

3

statute to both federal and state law would mean that "'relating to' would have two meanings at once." Maj. Op. at 14. The Supreme Court did not rely on such an argument; and I do not think we would say that a term has two different meanings just because its application leads to different results in different jurisdictions. There would be nothing outrageous about more (and, perhaps, broader) state statutes "relating to" controlled substances (whatever the definition of the term) than there are federal statutes relating to them.

I do recognize, however, that the Supreme Court in *Mellouli* relied on one feature of the removal statute that does not apply to the child-pornography enhancement. It noted "that Congress and the BIA [Board of Immigration Appeals] have long required a direct link between an alien's crime of conviction and a particular federally controlled drug." *Mellouli*, 135 S. Ct. at 1990. Perhaps this history was essential to the Court's holding in that case. But I am inclined to doubt that. The Court's "stretches to the breaking point" language was independent of the statutory history, and the vigor of the Court's language suggests that it alone would be a sufficient ground for decision.

Moreover, there is a reason for a strict limitation to federally defined "child pornography" that does not apply to a federally defined "controlled substance." Congress may have wished to be somewhat flexible with regard to state definitions of *controlled substance* because creative "chemists" continually come up with new dangerous drugs. The *Mellouli* dissent pointed out that under the majority's construction of the removal statute, "whenever a State moves first in subjecting some newly discovered drug to regulation, every alien convicted during the lag between state and federal regulation

4

would be immunized from the immigration consequences of his conduct." *Id.* at 1994. Apparently, two of the nine drugs that were controlled substances under Kansas law but not under federal law at the time of Mellouli's arrest were included in the federal definition within a year of the arrest. *See id.* In contrast, Congress would have had no doubt about alternative definitions of *child pornography* when it enacted its detailed definition. For whatever reason, it chose a more restrictive definition than the one enacted in Colorado.

Finally, I do not think that reversal in this case would create a split with decisions after *Mellouli* by other circuits interpreting the enhancement provision at issue in this case. None of the four opinions cited by the majority opinion concerned state child-pornography statutes. All addressed whether state statutes related to "sexual abuse" or "abusive sexual conduct," which are not terms defined by the federal statute.

This is not an easy case. But in my view, fidelity to the approach in *Mellouli* requires affirmance of the district court's decision not to impose the enhancement.