**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 19, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

TEXAS BRINE COMPANY, LLC,

       Defendant - Appellant,

and

OCCIDENTAL CHEMICAL
CORPORATION,

       Defendant - Appellee.

----------------------------------------

FRONTIER INTERNATIONAL GROUP,
LLC,

       Witness.

_____

No. 17-6075

TEXAS BRINE COMPANY, LLC,

       Defendant,

and

OCCIDENTAL CHEMICAL
CORPORATION,

       Defendant - Appellee.

----------------------------------------

FRONTIER INTERNATIONAL GROUP,
LLC,

       Witness - Appellant.

_____

No. 17-6076

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:16-CV-01026-D)**

_____

Martha Y. Curtis, Sher Garner Cahill Richter Klein & Hilbert, LLC, New Orleans, Louisiana (James M. Garner, Peter L. Hilbert, Jr., Kevin M. McGlone, Sher Garner Cahill Richter Klein & Hilbert, LLC, New Orleans, Louisiana, and Gerald L. Hilsher, Julia A. Palmer, McAfee & Taft, APC, Tulsa, Oklahoma, on the briefs), for Defendant-Appellant.

Jeremy K. Beecher (Bethany W. Kristovich with him on the briefs), Munger, Tolles & Olsen LLP, Los Angeles, California, for Defendant-Appellee.

Geren T. Steiner (Anton J. Rupert with him on the briefs), Rupert & Steiner, PLLC, Oklahoma City, Oklahoma, for Witness-Appellant.

_____

Before **LUCERO**, **BALDOCK**, and **HARTZ**, Circuit Judges.

_____

**BALDOCK**, Circuit Judge.

_____

I.

Defendant Texas Brine Company, LLC (Texas Brine) operates brine wells on land owned by Co-Defendant Occidental Chemical Corporation (Oxy) in Louisiana. In August 2012, a sinkhole appeared near one of these wells. After the sinkhole appeared, Texas Brine began clean-up efforts. To manage this crisis, Texas Brine consulted with others. In December 2012, Texas Brine retained Frontier International Group, LLC (Frontier), an Oklahoma-based consulting firm, for "emergency management, state and local government relations, community relations, litigation settlement strategy, and media communications." Some time later, Texas Brine retained Brooks Altshuler, an attorney and Frontier's owner, in his individual

capacity to advise the company on response and remediation efforts and to negotiate with government agencies. Later, Texas Brine retained Frontier as a consulting expert for trial preparation.

Litigation began soon after the sinkhole appeared, with multiple plaintiffs suing Texas Brine and Oxy in the Eastern District of Louisiana. In that suit, the plaintiffs alleged the negligent operation of a brine well resulted in the sinkhole and caused damage to the plaintiffs' properties. In this underlying litigation, Texas Brine filed a cross-claim against Oxy seeking indemnity for $100 million spent responding to the sinkhole crisis, $6.5 million of which Texas Brine claims is for the work Frontier performed. To verify the work Frontier performed and the cost of such work, Oxy issued a subpoena duces tecum to nonparty Frontier, requesting production of eight categories of documents related to services Frontier provided Texas Brine.[1] In response, Texas Brine filed a motion to quash the subpoena in the

---

[1] The eight categories requested are:

1. Documents concerning the Napoleonville Salt Dome in Louisiana;
2. Documents concerning the sinkhole occurrence in 2012;
3. Documents concerning the events leading up to the sinkhole occurrence;
4. Communications with Texas Brine concerning the sinkhole occurrence and any aspect of the ongoing litigation pertaining to the sinkhole occurrence;
5. Communications with Sonny Cranch or any employee of Cranch Hardy & Associates concerning the sinkhole occurrence and any aspect of the ongoing litigation pertaining to the sinkhole occurrence;
6. Communications with members of the media or public concerning the sinkhole occurrence and the ongoing litigation pertaining to the sinkhole occurrence;
7. Public statements generated by or on behalf of Texas Brine or any other entity in connection with the sinkhole occurrence and any aspect of the ongoing litigation pertaining to the sinkhole occurrence; and

Western District of Oklahoma, the district where compliance is required. *See* Fed. R. Civ. P. 45(d)(3)(A). Proceeding under the uncontested assumption that Louisiana law applied, Texas Brine first claimed the attorney-client privilege protected the subpoenaed communications.

In a written order, the district court granted the motion in part and denied it in part. *Leblanc v. Texas Brine Co.*, No. 16-1026, 2017 WL 913801, at *1 (W.D. Okla. Mar. 7, 2017). In its order, the court noted that Texas Brine failed to comply with Fed. R. Civ. P. 45(e)(2)(A), which requires a person moving to quash a subpoena under the claim of privilege to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Instead, Texas Brine asserted a "blanket claim of privilege." *Leblanc*, 2017 WL 913801, at *4. Only in the context of Texas Brine's claim of a blanket privilege did the court address whether Louisiana's attorney-client privilege statute extends the privilege to a public relations firm and its agents.[2] As Louisiana courts have not addressed this

---

8. Any interview transcripts, video footage, newspaper clippings, online articles, or other published, printed or distributed media concerning the sinkhole occurrence and any aspect of the ongoing litigation pertaining to the sinkhole occurrence.

[2] Louisiana's attorney-client privilege statute, in relevant part, protects "confidential communication[s], whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client," including communications with a "representative of a lawyer." La. Code Evid. Ann. art. 506(B) (2017). A "representative of a lawyer" is "a person engaged by the lawyer to assist the lawyer in the lawyer's rendition of professional legal services." *Id.* 506(A)(4).

4

exact issue, the court looked to Wigmore's definition of attorney-client privilege, which protects "legal advice." *Id.* (quoting 8 J. Wigmore, *Evidence in Trials at Common Law* § 2292, at 554 (J. McNaughton rev. ed. 1961)). Without a privilege log before it, the court concluded that much of the work Frontier performed for Texas Brine did not constitute "legal advice" and, thus, was not protected by the attorney-client privilege. The court finished its discussion on attorney-client privilege by stating: "the Court denies Texas Brine's Motion as to attorney-client privilege, *absent a specific showing of the legal nature of each withheld communication*." *Id.* (emphasis added).

Texas Brine also argued the work product doctrine governed the subpoenaed communications. The court reached a similar conclusion regarding this argument, stating the work product doctrine does not protect a public relations firm's written materials regarding business advice or an attorney's non-litigation activity. Again, the court emphasized much of the communications were not protected, "*absent a specific showing of the legal nature of each withheld communication, and that it was specifically created in anticipation of litigation*." *Id.* at *5 (emphasis added).

The district court concluded its order by again emphasizing "Texas Brine's *conclusory, blanket assertions of privilege* are insufficient to quash the subpoena." *Id.* (emphasis added). The court required Texas Brine to produce a privilege log for any communications that it believed were protected. With respect to the eight categories of subpoenaed documents, the court ruled as follows: Frontier need not produce category (1) because the request was overbroad; Frontier must produce the

5

documents requested in categories (2), (3), (4), (5), and (7) "*subject to privilege screening and production of a log consistent with Fed. R. Civ. P. 26(b)(5)(A)*"; and Frontier must produce the documents requested in categories (6) and (8).[3] *Id.* (emphasis added).

Texas Brine filed a timely notice of appeal.[4] Texas Brine then filed a motion to stay the district court's order pending these proceedings, which the district court denied. Frontier complied with the district court's order and has, at this point, produced around 20,000 documents and a privilege log regarding the confidentiality of the withheld documents.

---

[3] A log consistent with Fed. R. Civ. P. 26(b)(5)(A) is the same log as required by Fed. R. Civ. P. 45(e)(2)(A). The difference is that Fed. R. Civ. P. 26 governs discovery in general, while Fed. R. Civ. P. 45 governs subpoenas specifically.

[4] After the district court's ruling, Frontier filed a notice of appearance in the district court and also sought to appeal the court's order. Under these circumstances, Frontier, a nonparty to this suit, cannot appear for the first time on appeal. In general, only parties to a lawsuit or those who properly become parties may appeal an adverse judgment. *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). The exception to this rule is "where the nonparty [1] has a unique interest in the litigation and [2] becomes involved in the resolution of that interest in a timely fashion *both at the district court level and on appeal.*" *Abeyta v. City of Albuquerque*, 664 F.3d 792, 796 (10th Cir. 2011) (emphasis added). Regardless of whether Frontier has a unique interest in this litigation, it plainly fails to meet the second prong of this test. Even though Frontier could have filed a motion to quash pursuant to Fed. R. Civ. P. 45(d)(3), it did not. We acknowledge that, in an affidavit attached to Texas Brine's motion to quash the subpoena, Altshuler stated that Frontier objected to the subpoena. This statement falls short of what Fed. R. Civ. P. 45(d)(3) requires of Frontier. As such, Frontier did not become involved in this case in a timely fashion at the district court level, and this Court lacks jurisdiction to review Frontier's challenge to the district court's order. *See id.* at 797.

## II.

At the outset, Oxy claims this dispute is not ripe for adjudication because the district court did not actually order production of any allegedly privileged material. Instead, the court ordered production of non-privileged material to Oxy subject to a privilege log. Until the district court orders production of privileged material, Oxy forcibly argues, there is no dispute to resolve. In response, Texas Brine asserts the court erred in defining the scope of the privilege too narrowly and "order[ing] production of documents that are arguably privileged communications." Appellant Reply Brief, 2. In other words, Texas Brine argues in a vacuum that the court construed Louisiana law too narrowly.

But the court has yet to apply Louisiana law to any contested document. We will not resolve a dispute "if it rests upon 'contingent future events that may not occur as anticipated or indeed may not occur at all.'" *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). This principle—the ripeness doctrine—derives from both constitutional and prudential concerns. *Id.* at 1325. The purpose of the ripeness doctrine is to prevent the premature adjudication of abstract claims. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). To determine whether a dispute is prudentially ripe, this Court "balance[s] the fitness of the issue for judicial review with the hardship to the parties from withholding review." *Bennett*, 823 F.3d at 1326.

First, in determining the fitness of the issue for review, this Court considers "whether determination of the merits turns upon strictly legal issues or *requires facts that may not yet be sufficiently developed*." *Id.* (emphasis added) (quoting *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1118 (10th Cir. 2008)). Texas Brine characterizes the issue before us as a legal one, arguing the district court interpreted Louisiana's attorney-client privilege statute too narrowly. Assessing a claim of attorney-client privilege, or even a claim of work product doctrine, when a person withholds subpoenaed information, however, necessarily requires a sufficient factual record. "Only when the district court has been exposed to the contested documents and the specific facts . . . can it make a principled determination as to whether the attorney-client privilege in fact applies. Any attempt to make this type of determination without this factual foundation amounts to nothing more than a waste of judicial time and resources." *Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990) (citations omitted). This is why Fed. R. Civ. P. 45(e)(2)(A) requires a person or entity withholding information under a claim of privilege or work product to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Without knowing the nature of the documents, neither the requesting party nor the court can possibly assess the claim. In this case, Fed. R. Civ. P. 45(e)(2)(A) required the production of a privilege log. *See In re Grand Jury Subpoena*, 274 F.3d 563, 575–76 (1st Cir. 2001). Prior to

appealing, Texas Brine did not produce a privilege log regarding the documents Frontier withheld.

While the district court could have ruled otherwise, the court gratuitously allowed Texas Brine a second chance to produce a privilege log regarding the withheld documents.[5] Texas Brine instead appealed, effectively arguing it should not have to produce any documents or a privilege log. Why Texas Brine believes it can assert a blanket claim of privilege over its communications with Frontier without complying with Fed. R. Civ. P. 45(e)(2)(A) or Fed. R. Civ. P. 26(b)(5)(A) is beyond us.[6] The panel pressed Texas Brine on this subject at oral argument. Texas Brine responded that other courts have granted a blanket privilege over communications between a client and public relations firm without the benefit of a privilege log or viewing the documents *in camera*. *See In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213 (S.D.N.Y. 2001); *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F.

---

[5] *See, e.g.*, Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment ("A person claiming a privilege or protection who fails to provide adequate information about the privilege or protection claim to the party seeking the information is subject to an order to show cause why the person should not be held in contempt under subdivision [(g)]."); *In re Grand Jury Subpoena*, 274 F.3d at 576 ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim."); *Dorf & Stanton Comms., Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996) (affirming the district court's determination that the attorney-client privilege had been waived because the party asserting the privilege failed to comply with Fed. R. Civ. P. 45(e)(2)(A) and 26(b)(5)).

[6] We well understand Texas Brine is not the holder of the documents. But as the one asserting attorney-client privilege, Texas Brine has the burden to show the documents are privileged. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010). We do not see why Texas Brine, having retained Frontier's services, could not have obtained a privilege log from Frontier.

9

Supp. 2d 321 (S.D.N.Y. 2003). Besides the fact that neither *In re Copper Market* or *In re Grand Jury Subpoenas* are binding on this Court, the courts in those cases did in fact either have a privilege log or inspect the documents *in camera*. *See In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. at 215 ("Plaintiffs . . . move to compel the production of *documents listed on the privilege log (the 'Privilege Log')* produced by non-party . . . in response to a subpoena . . . ." (emphasis added)); *In re Grand Jury Subpoenas*, 265 F. Supp. 2d at 323 ("The Court initially required submission of the documents withheld by Firm on grounds of privilege for *in camera* inspection.").[7] Without the benefit of a privilege log or inspection of documents, we are left with an insufficient factual record—the exact problem Fed. R. Civ. P. 45(e)(2)(A) aims to prevent. Texas Brine has only itself to blame for the predicament in which it finds itself. Without the facts necessary to assess Texas Brine's claims of attorney-client privilege and work product, this dispute is not fit for appellate review.

While a lack of fitness in itself *might* not render an appeal unripe, we also must consider the hardship to the parties. In determining the hardship to the parties, this Court considers whether withholding review will place the parties in "a direct and immediate dilemma." *Bennett*, 823 F.3d at 1327 (quoting *Stout*, 519 F.3d at

---

[7] Even an attorney subpoenaed to produce documents would have to do more than assert a blanket claim of privilege to succeed in its motion to quash. *See, e.g.*, *In re Grand Jury Proceedings*, 616 F.3d at 1182–83 (explaining that not all communications between attorney and client are privileged and that an attorney must do more than "mak[e] a blanket claim"); *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987) (holding that "an attorney seeking to quash a subpoena must assert the attorney-client privilege on a document-by-document basis" rather than a blanket claim of privilege).

1118). Withholding review of the district court's order in this case will do no such thing. Texas Brine contends the court's order required it to produce "arguably privileged communications." The order simply did not. It required production of materials in (2), (3), (4), (5), and (7) "*subject to privilege screening and production of a log consistent with Fed. R. Civ. P. 26(b)(5)(A)*." *Leblanc v. Texas Brine Co.*, No. 16-1026, 2017 WL 913801, at *5 (W.D. Okla. Mar. 7, 2017) (emphasis added). In other words, the district court allowed Texas Brine to screen the requested documents, withhold the "arguably privileged communications," and produce a privilege log describing the nature of the withheld documents "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5)(A). This is no hardship. As explained above, this is exactly what every "person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material" must do. Fed. R. Civ. P. 45(e)(2)(A). Texas Brine's hardship at this point is that, in response to Frontier's production of a privilege log, Oxy *might* file a motion to compel production of documents that Frontier has withheld. If this happens, the district court *might* rule in Oxy's favor on the motion. This possibility is far from "a direct and immediate dilemma." *See Bennett*, 823 F.3d at 1327 (holding multiple contingencies rendered an appellant's potential injury "a destiny far from certain" and, thus, the claim was not ripe for adjudication).

Because both the factual record is insufficient and the court did not require production of protected documents, Texas Brine's appeal is not ripe for our review.

11

Accordingly, Frontier's appeal, No. 17-6075, is DISMISSED for want of jurisdiction, as Frontier did not properly become involved in this litigation at the district court level; Texas Brine's appeal, No. 17-6076, is DISMISSED for lack of ripeness.[8]

---

[8] Pending before this Court are also two motions: Texas Brine's motion to file Volume III of the Appendix under seal in case number 17-6075 and Oxy's motion to file Volume I of the Supplemental Appendix under seal in case number 17-6076. We GRANT the motions to seal these limited parts of the record until the conclusion of all pending litigation regarding the sinkhole.