NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3487
_____

UNITED STATES OF AMERICA

v.

CHARLES MILLER,
                                        Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(No. 1-12-cr-00126-001)
District Judge: Honorable Lawrence F. Stengel
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 27, 2014
_____

Before: FUENTES and SHWARTZ, *Circuit Judges*, and ROSENTHAL, *District Judge*.[1]

(Filed: April 30, 2014)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*

_____

[1] The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

After Charles Miller pleaded guilty to a drug offense, the District Court imposed several special conditions of supervised release related to his previous convictions for sexual misconduct. Miller now challenges the imposition of these special conditions. For the reasons that follow, we affirm.

I.

Federal Express intercepted several packages containing large quantities of marijuana and cocaine, all sent from a fictitious entity in San Diego, California to persons in Pennsylvania. One package, containing roughly 20 pounds of marijuana, was addressed to "Gina Smith" at Charles Miller's address in Manheim, Pennsylvania. The Drug Enforcement Administration ("DEA") made a controlled delivery of this package to Miller's house, where it was signed for by Miller's girlfriend. Miller subsequently admitted to the DEA that he had received several packages of drugs on behalf of his co-conspirator, James Armstrong. Miller would later testify for the Government at Armstrong's trial.

Miller pleaded guilty to one count of using a communication facility to distribute marijuana, in violation of 21 U.S.C. § 843(b). Following Miller's plea, the United States Probation Office prepared a presentence report ("PSR"). The PSR calculated Miller's Guideline range at 77 to 96 months' incarceration, but noted that the statutory maximum for the crime at issue was 48 months. It also detailed Miller's extensive criminal record, including eleven convictions for sexually related crimes between 1974 and 2000. These crimes included, among others, the forcible rape of his 12 year-old daughter in 1985, and

six years later—while he was incarcerated for raping his daughter—the indecent assault of a boy while he and his mother were visiting Miller in prison.

At sentencing, Miller, who had already spent a year in prison, asked for time served on the grounds that a lenient sentence was merited by his substantial assistance in the Armstrong case as well as by his poor health. The District Court agreed that Miller had been a valuable asset in the Armstrong trial and took note of Miller's deteriorating health. However, the District Court declined to give him time served. Noting Miller's "really horrendous criminal record," the District Court concluded that additional prison time was appropriate. App. at 90. It explained in part:

> I am concerned that a sentence of time served . . . doesn't serve the interest of community protection that [Miller's] record really calls for.
>
> And I am very mindful of the fact that we're here on a communications facility charge in connection with a drug offense and not on a child sex case, but this is somebody whose guidelines are far in excess of even the statutory maximum for the crime he committed, driven entirely by this lengthy and disturbing criminal history.

*Id.* at 90-91. The District Court ultimately imposed a below-Guidelines sentence of 24 months' incarceration.

The District Court also imposed a supervised release term of one year. The Court ordered Miller to comply with the standard conditions of supervised release, and then ordered him to comply with five special conditions of supervised release. Terms 2 and 5 are at issue in this appeal:

> [Term] 2. The defendant shall participate, at the defendant's expense, in a sex offender treatment program, which may include risk assessment testing, counseling, and therapeutic polygraph examinations, and shall comply with

3

all requirements of the treatment provider. The treatment is to be conducted by therapist approved by the probation officer.

. . . .

[Term] 5. As directed by the probation officer, you shall report to the state sex offender registration agency in any state where you reside, are employed, carry on a vocation, or are a student, and shall comply with the registration requirements.

*Id.* at 6. After the District Court announced these conditions, Miller's attorney objected on the grounds that Terms 2 and 5 were not "reasonably related to the offense of conviction." *Id.* at 95. The District Court declined to give any additional explanation for imposing Terms 2 and 5.

On appeal, Miller argues that the imposition of Terms 2 and 5 was both procedurally and substantively unreasonable, and that he lacked sufficient notice of the imposition of Term 5.[2]

## II.

## A.

Miller first argues that the imposition of the two sex-related special conditions was substantively unreasonable. We disagree.

"Though district courts have broad discretion in fashioning special conditions of supervised release, this discretion is not unfettered." *United States v. Heckman*, 592 F.3d 400, 405 (3d Cir. 2010). Pursuant to 18 U.S.C. § 3583(d)(1), a court may impose a special condition of supervised release only if the condition is "reasonably

---

[2] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction to review Miller's sentence under 28 U.S.C. § 1291.

related" to certain factors set forth in 18 U.S.C. § 3553(a), including deterring future crime, protecting the public, and rehabilitating the defendant. Special conditions of supervised release must "involve[] no greater deprivation of liberty than is reasonably necessary" to achieve one or all of these goals. 18 U.S.C. § 3583(d)(2). While special conditions must be "related in a 'tangible way' to the crime or to something in the defendant's history," they need not be related to both. *United States v. Pruden*, 398 F.3d 241, 249 (3d Cir. 2005) (citation omitted); *see also United States v. Perazza-Mercado*, 553 F.3d 65, 70 (1st Cir. 2009) ("[T]he Guidelines do not require a direct relationship between the offense and the condition . . . ."); *United States v. T.M.*, 330 F.3d 1235, 1240 (9th Cir. 2003) (same).

Miller makes three arguments as to why the District Court has abused its discretion by imposing Terms 2 and 5. First, Miller argues that the District Court erred by imposing convictions that "are not substantively related in a tangible way to Miller's drug-related offense of conviction." Appellant's Br. at 18. But as we explained above, where a condition of release relates to a defendant's history and characteristics, it need not also relate to the crime for which the defendant is being sentenced. The briefest glance at Miller's criminal history reveals that Terms 2 and 5 are reasonably related to Miller's lifelong history of committing serious sex offenses. Therefore, this argument lacks any merit.

Second, Miller points to the thirteen year lapse between his last sex offense conviction and the sentencing at issue here, arguing that such a lengthy gap in time dissipated any need to deter, and protect the public from, his sexual misconduct. He cites

5

several cases wherein our sister circuits have found that district courts abused their discretion by imposing sex-related supervised release conditions based solely upon conduct that occurred in the distant past. *See United States v. Dougan*, 684 F.3d 1030, 1033-37 (10th Cir. 2012) (vacating sex offender treatment special conditions of release for defendant convicted of robbing a post office because conditions were insufficiently related to defendant's seventeen-year-old conviction for aggravated battery and thirty-three-year-old conviction for sexual battery); *United States v. Rogers*, 468 F. App'x 359, 362-63 (4th Cir. 2012) (concluding that imposition of sex offender conditions based upon a twenty-three-year-old forcible rape conviction constituted an abuse of discretion); *United States v. Sharp*, 469 F. App'x 523, 525-26 (9th Cir. 2012) (holding that some of the sex offender conditions imposed on defendant as part of his sentence for possessing a firearm were unreasonable, where defendant's sole sex offense was over a decade old at the time of sentencing); *United States v. Carter*, 463 F.3d 526, 530-32 (6th Cir. 2006) (determining that a district court abused its discretion by imposing sex offender treatment on a defendant convicted of firearm possession, where defendant committed two sex offenses seventeen years earlier); *T.M.*, 330 F.3d at 1237-1241 (concluding that the defendant's twenty-year-old and forty-year-old sex offenses "do not establish a reasonable relationship between his sexually-related conditions of supervised release and either deterrence, public safety, or rehabilitation."); *United States v. Scott*, 270 F.3d 632, 636 (8th Cir. 2001) (vacating special sex offense conditions which were imposed by the district court as a result of a fifteen-year-old rape conviction).

6

But Miller's history of sexual misconduct is far more extensive—and egregious—than that of the defendants at issue in the cases cited above, all of whom had been convicted of only one or two instances of sexual misconduct in the remote past. Miller has failed to direct us to a single case in which a district court was found to have abused its discretion by imposing sex offense conditions on a defendant whose criminal record was anything like Miller's. Indeed, in *Dougan*, the Tenth Circuit noted that, when faced with a defendant such as Miller, the imposition of sex-related supervised release conditions for remote crimes may well be appropriate:

> On different facts than those presented in the case at hand, a seventeen-year-old sex crime conviction could plausibly be reasonably related to the imposition of such conditions, and a district court would not abuse its discretion in imposing them. For example, *if the defendant had an extensive history of committing sex crimes that involved minors*, a seventeen-year-old sex crime conviction might not necessarily be too remote to support a condition of supervised release involving contact with minors.

*Dougan,* 684 F.3d at 1035 (emphasis added).

Miller's history of committing sex crimes is, to say the least, "extensive." Thus, despite the length of time between Miller's last sex crime conviction and his sentencing for the instant crime, the District Court had adequate reason to believe—given the nature and sheer number of Miller's convictions for sexual misconduct—that the imposition of Terms 2 and 5 would serve to protect the public and deter future crime. While the remoteness of a defendant's sexual misconduct conduct from the imposition of a condition of supervised release may in some instances suggest that the condition is unreasonable, this is not such a case.

7

Third, Miller argues that there is no longer a need to deter him from committing another sex crime, or to protect children from him, because he is "68 years old, confined to a wheelchair, and suffering numerous debilitating medical conditions." Appellant's Br. at 22. Again, given the seriousness of Miller's record of sexual abuse, we cannot say that the District Court abused its discretion in concluding that Miller needed to be deterred from committing additional sex crimes, even in his incapacitated state. The District Court was confronted with a defendant who managed to molest a child during a period of incarceration. It is therefore not at all clear to us that Miller's confinement to a wheelchair is, on its own, enough to protect the public.

B.

Miller also contends that remand is appropriate because "the District Court provided no explanation whatsoever to justify imposing Term 2 and Term 5." *Id.* at 13.

"We have consistently required that district courts explain and justify conditions of supervised release." *United States v. Miller*, 594 F.3d 172, 184 (3d Cir. 2010). That is, "[a] district court must 'state the reasons in open court for imposing a particular' special condition so that the appellate court is not left to speculate about the reasons." *Id.* (quoting *United States v. Loy*, 191 F.3d 360, 371 (3d Cir. 1999)). However, even where a district court fails to state the reasons for imposing the particular conditions in question, we need not remand "if we can 'ascertain any viable basis for the . . . restriction in the record before the District Court . . . on our own.'" *United States v. Voelker*, 489 F.3d 139, 144 (3d Cir. 2007) (alteration in original) (quoting *United States v. Warren*, 186 F.3d 358, 367 (3d Cir. 1999)).

We easily deduce from the sentencing transcript that the District Court was troubled by Miller's "lengthy and disturbing criminal history," App. at 91, and that this history informed its decision to impose Terms 2 and 5. In any event, for the reasons explained above, we ascertain a viable basis for the terms of supervised release. Accordingly we need not remand the case for further explanation.

C.

Miller also argues that the District Court violated his due process rights by failing to provide notice before imposing Term 5. Unlike Term 2, Term 5 is contemplated neither in the PSR nor in the Government's presentence submission. Nor did the District Court announce before imposing Term 5 that it was considering imposing it.

Some case law outside this Circuit suggests that the imposition of a condition of supervised release without adequate notice might run afoul of Federal Rule of Criminal Procedure 32(i)(1)(C), which requires a sentencing court to "allow the parties' attorneys to comment on . . . matters relating to an appropriate sentence." *See, e.g.*, *United States v. Wise*, 391 F.3d 1027, 1033 (9th Cir. 2004). *But see United States v. Moran*, 573 F.3d 1132, 1138 (11th Cir. 2009) (concluding that *Wise* and similar cases have been abrogated by *Irizarry v. United States*, 553 U.S. 708 (2008)). Whether Rule 32 requires a sentencing court to give the parties notice before imposing a condition that is neither contemplated by the PSR nor asked for in the Government's presentencing submission, it is certainly better practice for the sentencing court to do so. In this instance, however, we conclude that the lack of notice does not warrant remand.

Again, Term 5 provides that, "[a]s directed by the probation officer, you shall report to the state sex offender registration agency in any state where you reside, are employed, carry on a vocation, or are a student, and shall comply with the registration requirements." App. at 6. While its language is admittedly unclear, we do not read Term 5 to impose additional registration requirement on Miller. Indeed, Term 5 does not appear to impose any additional requirements on Miller at all. It simply mandates that Miller "comply with the registration requirements"—in Pennsylvania, or in any other state where he may go in the future.[3] Term 5 is therefore duplicative of the condition— imposed on every federal defendant as a condition of his sentence of probation—that "the defendant not commit another Federal, State, or local crime during the term of probation." 18 U.S.C. § 3563(a)(1). Therefore, we are not troubled by the fact that the District Court imposed Term 5 without providing prior notice to Miller.

III.

For the reasons stated above, we affirm the two challenged special conditions of supervised release.

---

[3] According to the PSR, Miller is no longer required to register as a sex offender in Pennsylvania, and we do not believe that Term 5 imposes any new requirement on Miller to register in the Commonwealth.

10