FILED
United States Court of Appeals
Tenth Circuit

February 23, 2018

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENCH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

STEVEN ANTHONY FORD,

　　　　Defendant - Appellant.

No. 17-2073

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:08-CR-00229-JAP-2)**

---

Ryan J. Villa, The Law Office of Ryan J. Villa, Albuquerque, New Mexico, for Appellant.

Marisa A. Ong, Assistant United States Attorney (James D. Tierney, Acting United States Attorney, with her on the brief), Las Cruces, New Mexico, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **MORITZ**, and **EID**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

　　The district court sentenced Steven Ford to twenty years' imprisonment for

various firearms-possession charges, followed by three years of supervised

release. Because of a sex-offense conviction nineteen years earlier, the district

court placed sex-offense-specific conditions on Ford's term of supervised release. Specifically, the court required Ford to undergo a sex-offender assessment, and if recommended by the assessment, to submit to treatment which could include polygraph questioning about his sexual past.

Ford contends on appeal that the district court abused its discretion because the sex-offender conditions are not reasonably related to the sentencing factors in 18 U.S.C. § 3583. We hold that, notwithstanding Ford's long custodial sentence and new life sentence for a different crime, Ford's challenge is ripe for review. We further hold the district court did not abuse its discretion by requiring Ford to undergo a sex-offender risk assessment as a condition of supervised release.

## I. Background

In 1998, a Kansas state court sentenced Steven Ford to ten years' imprisonment after he pleaded guilty to a charge of Indecent Liberties with a Child. The victim was a thirteen-year-old girl.

While serving time for the sex-offense conviction as well as other crimes, in 2007 Ford escaped from a maximum-security prison in Kansas. Law enforcement found Ford in New Mexico and brought federal charges for (1) being a felon in possession of a firearm; (2) being a fugitive in possession of a firearm; and (3) possessing stolen firearms. A jury convicted Ford on all counts and the court sentenced Ford to 360 months' imprisonment.

In October 2016, Ford filed a 28 U.S.C. § 2255 motion seeking to vacate his sentence, and in February 2017, the district court granted the motion. At the re-sentencing hearing the following month, the district court sentenced Ford to 240 months' imprisonment, to run consecutively to his state terms of imprisonment in Kansas. The court also sentenced Ford to supervised release for three years after completion of his custodial sentence.

Among several special conditions for Ford's supervised release, the court imposed two sex-offender-specific conditions. First, the court required Ford to "undergo a sex offense-specific assessment to determine the level of risk for sexual dangerousness, recidivism, and amenability to treatment and formulate treatment recommendations if treatment is necessary." R., Vol. I at 92. Second, "[i]f recommended in the sex offense-specific assessment," Ford "must begin attending and participating in sex-offender treatment consistent with the recommendations of the evaluation." *Id.* Treatment can include "clinical polygraph examinations" if they are "directed by the probation officer and/or treatment provider." *Id.*

Ford's attorney objected to these special conditions. The offenses before the court were the firearms convictions, he argued, and Ford's only prior sex-offense was in 1998—at this point nineteen years before—when Ford was only seventeen years old.

The court explained the special conditions were "based on his prior sex offense conviction engaging in sexual acts with a 13-year-old girl" and "further, that there ha[d] been no indication that the defendant ha[d] ever received sex-offender-specific treatment." R., Vol. IV at 10. The conditions were "reasonable and justified" because Ford had not undergone a "sex-offense-specific assessment, largely because he'[d] been in prison virtually his entire life." *Id.* at 12. Though it could "be that after the assessment nothing is recommended," the court thought it "appropriate to have the assessment done." *Id.* at 13. The conditions thus remained.

Ford appealed the reasonableness of the district court's decision to attach those two conditions to his supervised release. While this appeal was pending, in a proceeding unrelated to this case, Ford pleaded guilty to the murder of his cell-mate in an Oklahoma state prison and an Oklahoma court sentenced him to life in prison without the possibility of parole.

## II. Analysis

Ford challenges the sex-offender conditions because they are linked to a crime that occurred long before his federal conviction. In addition to arguing the conditions were reasonable, the government asks us to defer ruling on the reasonableness of the conditions on ripeness grounds. Since Ford's long terms of incarceration mean he may never begin his period of supervised release, the government argues that prudence counsels against reviewing Ford's conditions of

-4-

supervised release at this time.  Before we reach the merits, then, we must address the government's argument that we should exercise our discretion under the prudential ripeness doctrine and decline to review Ford's challenge.[1]

### A.  Prudential Ripeness

The government offers two reasons why this appeal is not ripe: Ford's twenty-year federal sentence and the fact that Ford recently pleaded guilty to murder and received a sentence of life without parole.  Neither reason leads us to withhold review entirely.  We conclude, however, that Ford's challenge is ripe only as it pertains to the condition requiring him to undergo sex-offender assessment, not against the condition requiring him to submit to a polygraph examination if directed to do so by his probation officer or treatment provider.

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated or indeed may not occur at all.'"  *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 319 (2016) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  "Our prudential ripeness doctrine requires us to balance" (1) "the fitness of the issue

---

[1] All parties agree that Ford's challenge presents a sufficiently ripe case or controversy for Article III purposes.  *See United States v. Vaquera-Juanes*, 638 F.3d 734, 736 (10th Cir. 2011) (a challenge to conditions of supervised release "involves a genuine case or controversy because the judgment is a final court order binding on an incarcerated defendant at the time of his appeal").

for judicial review" and (2) "the hardship to the parties from withholding review."
*Id.*

As for "whether the issue is fit for judicial review, we focus on whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." *Id.* As for the "hardship to the parties," we "consider whether the parties face a direct and immediate dilemma" if we withhold review. *Id.* at 1326–27 (internal quotation marks and citation omitted).

Criminal cases are "rarely" subjected to the "hurdle" of prudential ripeness, *United States v. White*, 244 F.3d 1199, 1202 (10th Cir. 2001), but our court has held that application of prudential ripeness doctrine to challenges involving conditions of supervised release is appropriate in some circumstances. In *Bennett*, for example, we declined to review a defendant's challenge because the sex-offender testing he protested against was contingent on his treatment provider's decision to order it and there was a significant chance that kind of testing would no longer be in use when he was released. 823 F.3d at 1326–27.

But in *United States v. White*, 244 F.3d at 1203, and *United States v. Wayne*, 591 F.3d 1326, 1329 n.1 (10th Cir. 2010), we noted that challenges to conditions of supervised release are usually prudentially ripe for review even before the conditions are actually enforced. The issues are typically "legal ones that we can easily resolve without reference to concrete facts," a defendant will usually "experience a hardship if we do not resolve the issues," and "the judicial

system has an interest in dealing with [the] case as expeditiously as possible, instead of waiting for a distinct appeal of a conviction for a violation of the conditions of release." *Wayne*, 591 F.3d at 1329 n.1 (10th Cir. 2010) (quoting *White*, 244 F.3d at 1203).

These observations apply here. Ford's challenge is a "legal one" that can be "easily resolved." And withholding review would place at least a slight hardship on Ford. It is true that Ford may challenge the sex-offender assessment term if he is charged with violating it and may also seek to modify his terms of supervised release before they are applied. *See* 18 U.S.C. § 3583(e)(2); Fed. R. Crim. P. 32.1(c). But to challenge the condition by violating it would risk re-incarceration. And a request to modify the condition—unlike this direct appeal—will require he proceed pro se or retain an attorney near the end of his incarceration, *see* Fed. R. Crim. P. 32.1(c)(2)(B), not to mention the possibility that Ford could be subjected to the challenged condition "before his request to modify [is] considered by the district court," *United States v. Rhodes*, 552 F.3d 624, 629 (7th Cir. 2009).

Although Ford's challenge to these conditions of supervised release would thus ordinarily be ripe on its face, the government puts forward two propositions as to why Ford's challenge is unfit for present review. First, that Ford's twenty-year custodial sentence places the enforcement of these conditions of supervised release too far in the future for us to review them now. Second, that Ford's recent

sentence to life in prison without the possibility of parole renders any review of Ford's conditions of supervised release unripe unless and until that life sentence is overturned.

### 1. The Length of the Custodial Sentence

As a general matter, a long custodial sentence is a factor weighing against reviewing a condition that presents difficult legal or factual components. In *Bennett*, we suggested that when a condition of supervised release will not be applied for many years, the legal issue may not be entirely fit for review. 823 F.3d 1316, 1326–27 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 319 (2016). "Even if we remanded," we said, "the district court would be faced with the nearly impossible task of determining how effective [experimental] testing might be for Bennett *after completing his ten-year sentence*. This factor weighs against review." *Id.* (emphasis added).

Other circuits have similarly considered the imminence of a defendant's release when evaluating the ripeness of challenges to conditions of supervised release. *See United States v. Medina*, 779 F.3d 55, 67 (1st Cir. 2015) ("Moreover, Medina was sentenced to thirty months in prison in July of 2013. That means he, too, could be subject to the condition he challenges in the near term . . . ."); *Rhodes*, 552 F.3d at 628 ("His term of supervision will begin only after his release from imprisonment[,] which could not be sooner than eight and one-half years after he enters the federal prison system upon the completion of his

Wisconsin sentence . . . ."); *United States v. Lee*, 502 F.3d 447, 450 (6th Cir. 2007) ("In addition, Lee will not be released from prison until 2021—fourteen years from now."); *United States v. Balon*, 384 F.3d 38, 46 (2d Cir. 2004) ("Because Balon will not begin his term of supervised release for three years, it is impossible to evaluate at this time whether . . . [the condition] will occasion a greater deprivation of his liberty than necessary . . . ."); *United States v. Thomas*, 198 F.3d 1063, 1065 (8th Cir. 1999) ("Thomas will not be subject to the condition for nearly a decade, during which time any number of events may occur that would make the condition irrelevant.").

But the length of the custodial sentence is only one factor. As we said in *Bennett*, overemphasis on this factor "would counsel against adjudication for most conditions of supervised release where the defendant has a lengthy sentence." 823 F.3d at 1327. And prudential ripeness is, of course, a discretionary doctrine. Even when a case involves a lengthy custodial sentence, resolving the challenge on direct review may be the simpler course—especially since defendants must challenge their conditions of supervised release on direct appeal to keep their claims of error from becoming time-barred. *See United States v. Wayne*, 591 F.3d 1326, 1334 (10th Cir. 2010) ("Ms. Wayne should have challenged the legal and factual basis of the initial supervised release condition on direct appeal from the sentencing court's judgment. Because Ms. Wayne neglected to raise this claim at that time, she is time-barred from doing so now."); Fed. R. App. P. 4(b)(1)(A).

We think the wiser course here is to review Ford's challenge in spite of his long term of incarceration.

### 2. The Unrelated Life Sentence

The government's second ripeness argument centers around an entirely different legal proceeding. In 2012, the Kansas Department of Corrections transferred Ford to the Oklahoma Department of Corrections to complete his sentence. In 2013, prison authorities found Ford's cell-mate dead. While initially believed to be a natural death, an autopsy revealed that Ford's cell-mate was strangled. Cleveland County, Oklahoma then charged Ford with first-degree murder, and Ford faced a possible sentence of life in prison or life without parole. At oral argument, counsel informed us that Ford recently pleaded guilty to the murder and received a sentence of life without the possibility of parole. Appellees have since supplemented the record with a copy of that judgment.[2]

The government says this fact should preclude our review. Before Ford pleaded guilty, the government argued the enforcement of the challenged conditions were "contingent" on Ford not being sentenced to life in prison for this other crime. Now that Ford has been sentenced to life without parole, the government argues the enforcement of the conditions are "contingent" on the reversal of this life sentence.

---

[2] We GRANT appellee's motion to supplement the record.

-10-

But this is not the kind of "contingency" we have considered before. When we have found a condition of supervised release too "contingent" to be ripe, the condition was, by its own terms, contingent on the decision of another person. *See Bennett*, 823 F.3d at 1327. In *Bennett*, we held the defendant's challenge to a condition requiring him to be subject to a particular kind of sex-offender testing was not ripe for review because that condition's application was contingent on the treatment provider's say-so. *Id.* at 1327. Under the condition's own terms, the treatment provider had to "evaluate him and find that testing [was] appropriate" before the requirement would be triggered. *Id.*

Unlike *Bennett*, the so-called "contingency" the government points to here has nothing to do with the terms themselves. Nothing in the sex-offender assessment term itself is contingent on the fate of Ford's murder conviction. Rather, the government is simply saying that we should find Ford's challenge "prudentially moot," so to speak, because a new circumstance might prevent the defendant from ever being released.

When we have withheld review for such a reason, we have demanded substantial certainty that the defendant will never be subject to supervised release. In *United States v. Vaquera-Juanes*, for example, we held the defendant's challenge unripe because it was certain the defendant would be removed from the country as soon as he completed his term of incarceration. 638 F.3d 734, 737 (10th Cir. 2011). The record "fail[ed] to reveal any realistic possibility" the

defendant would ever "be released." *Id.* But we rejected the government's argument that the seventy-seven-year-old defendant's challenge was not ripe because he "could die in prison." *Id.* at 736 n.1. While it was true the defendant's death in prison would mean his supervised release would never begin, that possibility was not sufficiently certain and could potentially apply to "all criminal defendants," whatever their age or term of incarceration. *Id.*

Here, we decline to withhold judicial review. Ford's murder conviction or sentence may be subject to direct appeal or future habeas proceedings. Since the case is now before us and can be resolved on the record we have, we think the better course is to consider Ford's appeal.

### 3. *The Contingency of the Polygraph Term*

But even though we choose to consider Ford's appeal, his challenge is not ripe with respect to *all* the conditions of supervised release. When a condition of supervised release is, by its own terms, contingent on the decision of a different actor, that condition is not ripe for immediate review. *See Bennett*, 823 F.3d at 1327; *United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003) (the challenged action was not ripe because it would only occur if another actor, the Bureau of Prisons, failed to follow the law); *Lee*, 502 F.3d at 450 (holding challenge unripe in part because "there [was] no guarantee" the treatment provider would require the testing at issue); *Rhodes*, 552 F.3d at 629 (same); *but see United States v. Rock*, 863 F.3d 827, 833 & n.1 (D.C. Cir. 2017) (challenge to

-12-

condition was ripe even though defendant would only be subject to it if "directed by the United States probation office"); *United States v. Weber*, 451 F.3d 552, 556–57 (9th Cir. 2006) ("A term of supervised release, even if contingent, is part and parcel of the defendant's sentence and can be challenged on direct appeal."); *United States v. Zinn*, 321 F.3d 1084, 1088–89 (11th Cir. 2003) (challenge to a condition that was contingent on a treatment plan was ripe).

Here, the condition that Ford undergo a sex-offender risk assessment is not contingent on anything: upon release, Ford must be assessed. But the condition that Ford submit to polygraph testing is only required if (1) treatment is "recommended in the sex-offense-specific assessment" and (2) polygraph testing in particular is "directed by the probation officer and/or treatment provider." R., Vol. I at 92. As the very terms indicate and Ford himself admits, Aplt. Reply at 6 n.2, the polygraph term is contingent. That term is therefore not ripe for review.

For this reason, we only review whether the district court abused its discretion by requiring that Ford undergo sex-offender risk assessment upon release.

### B. The Reasonableness of the Assessment Condition

Since Ford objected to this "special condition of supervised release at the time it [was] announced, this Court reviews for abuse of discretion." *United States v. Dougan*, 684 F.3d 1030, 1034 (10th Cir. 2012). "[W]e will not disturb the district court's ruling absent a showing it was based on a clearly erroneous

finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *United States v. Bear*, 769 F.3d 1221, 1226 (10th Cir. 2014) (alterations incorporated) (quoting *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010)).

"District courts have broad discretion to impose special conditions of supervised release." *Bear*, 769 F.3d at 1226. Under 18 U.S.C. § 3583(d), the conditions must (1) "be reasonably related to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, or the defendant's educational, vocational, medical, or other correctional needs"; (2) "involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation"; and (3) "be consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* at 1226; *see* 18 U.S.C. §§ 3553(a), 3583(d).

"The district court is required to give reasons on the record for the imposition of special conditions of supervised release." *United States v. Hahn*, 551 F.3d 977, 982 (10th Cir. 2008). While a "generalized statement of its reasoning" suffices, *id.* at 982–83, "the explanation must be sufficient for this court to conduct a proper review." *United States v. Martinez-Torres*, 795 F.3d 1233, 1238 (10th Cir. 2015).

We have held that "[s]ex offender conditions of supervised release may be imposed, even at sentencing for crimes which are not sex crimes, if supported by § 3583(d)." *Bear*, 769 F.3d at 1226. But "in such cases we would require a stronger nexus . . . between the defendant's history and characteristics and the sex-offender-related conditions . . . especially . . . where the special conditions of release implicate significant liberty interests." *Dougan*, 684 F.3d at 1036.

Accordingly, "[p]rior sex offenses can be too temporally remote for sex-offender conditions of supervised release to be reasonably related" to the factors prescribed by § 3583. *Bear*, 769 F.3d at 1227. Yet "[t]here is no bright-line rule for the outer limit of temporal remoteness, in part because district courts must consider more than just the age of a defendant's prior conviction." *Id.*

In this case, the district court decided that requiring Ford to undergo a sex-offender risk assessment was appropriate under the statutory factors. It did so because (1) Ford's prior sex conviction involved a minor; (2) there was no record of Ford having received sex-offender treatment; and (3) Ford had been incarcerated almost the entire time since his sex crime conviction.

Ford argues the nineteen-year-old conviction for a sex offense he committed when he was seventeen was "too temporally remote" to serve as the sole basis for placing sex-offender-specific conditions of supervised release. Ford further argues the prior offense was not a violent crime, there is no evidence

that he has committed another sex offense, and his new conviction was not related to a sex offense.

We are mindful of cases that look skeptically at the imposition of sex-offender conditions based solely on prior crimes that are remote in time. *See, e.g.*, *Dougan*, 684 F.3d at 1034–35 (collecting cases, none of which upheld conditions based on convictions more than seventeen years old); *United States v. Miller*, 565 F. App'x 139, 142 (3d Cir. 2014) (unpublished) (collecting cases finding previous sex offenses too old to justify sex-offender conditions). In *Dougan*, we held that Dougan's "seventeen-year-old conviction for a sexual battery was too remote in time to be reasonably related to the imposition of special sex-offender-related conditions" because "the government presented no evidence that Dougan ha[d] a propensity to commit any future sexual offenses or that Dougan has committed any sexual offense since 1994." *Dougan*, 684 F.3d at 1037.

But even in *Dougan*, we recognized that "a seventeen-year-old sex crime conviction could plausibly be reasonably related to the imposition of such conditions, . . . [f]or example, if the defendant had an extensive history of committing sex crimes that involved minors." *Id.* at 1035. Ford's prior conviction, unlike Dougan's, involved a minor.

In addition, the court in *Bear* thought the district court's imposition of sex-offender conditions was justified in part because "there was no record

-16-

evidence of a prior assessment or treatment." 769 F.3d at 1226. The same is true here. As Ford's own counsel admitted during sentencing, there was no record of Ford having received treatment after his first offense. R., Vol. IV at 10.

And although there is no evidence that Ford has committed another sex crime, Ford has been incarcerated almost continuously since his first sex offense—leaving him few chances to relapse. The lack of newer sex offenses, though having "some merit," is not as "probative of his proclivities" as a "similarly blemish-free period of time while at liberty." *Dougan*, 684 F.3d at 1036.[3]

On this record, we cannot say the district court abused its discretion or manifested a clear error of judgment. Though Ford's prior sex-offense conviction was nineteen years old, the prior offense involved a minor, there was no record that Ford had received treatment, and Ford spent the nineteen years between the prior sex offense and the sentencing hearing behind bars—severely curtailing the probative value of his subsequently "clean record." *See United States v. Johnson*, 697 F.3d 1249, 1250 (9th Cir. 2012) (affirming sex-offender assessment condition based on two decades-old sex offense in part because defendant's prior

---

[3] Ford also argues his twenty-year term of incarceration makes the assessment requirement unreasonable because the assessment will not occur until his release—which at the earliest will be almost forty years after his original sex offense. But we have already held that a long time gap between sentencing and the actual application of a condition does not make the district court's decision an abuse of discretion. *See Hahn*, 551 F.3d at 984.

completion of treatment could not be confirmed); *United States v. Brogdon*, 503 F.3d 555, 565 (6th Cir. 2007) (upholding condition based on string of sex offenses between twelve and twenty-two years old because some of the offenses involved minors).

## III.  Conclusion

We therefore AFFIRM the district court's special condition of supervised release requiring Ford to undergo a sex-offender risk assessment upon release.