**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JON JULIAN CABRAL,

     Defendant - Appellant.

No. 18-1263

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CR-00024-RM-1)**
_____

Kathleen Shen, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, and Veronica S. Rossman, Assistant Public Defender, with her on the briefs), Denver, Colorado, for Defendant - Appellant.

Karl L. Schock (Jason R. Dunn, United States Attorney, and Paul Farley, Assistant United States Attorney, on the brief), Denver, Colorado, for Plaintiff - Appellee.
_____

Before **LUCERO**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

     Jon Julian Cabral pleaded guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to forty-six months' imprisonment followed by three years' supervised release. Among

other supervised-release conditions, the court imposed Standard Condition Twelve, which allows a probation officer to require Mr. Cabral to notify third parties if the probation officer determines Mr. Cabral poses a risk to them. Apart from a reference to "making sure the public is protected," the district court gave little guidance on how the probation officer should determine whether Mr. Cabral poses a risk to another person. Indeed, the court admitted that it "can't say what the risk is now" and that unforeseen risks, unrelated to Mr. Cabral's crime of conviction, might arise in the future and trigger the condition.

Mr. Cabral challenges Standard Condition Twelve, arguing it is unconstitutionally vague and impermissibly delegates judicial power to a probation officer. Our prudential ripeness doctrine prevents us from reaching his vagueness challenge. However, his improper-delegation challenge is ripe for review, and we hold the risk-notification condition, as imposed by the district court, improperly delegates judicial power to a probation officer.

## I.    BACKGROUND

Early in the morning on December 30, 2017, Denver police officers responded to the report of a fight at a nightclub. Based on live security footage, a dispatcher told the responding officers that a male had just arrived in a white Chevy sedan and pulled a handgun out of his pocket. Upon arrival, the officers quickly identified Mr. Cabral as the man the dispatcher had described. But when they tried to detain him, Mr. Cabral walked toward the Chevy and tossed the handgun into the car

2

through an open door. The officers then arrested Mr. Cabral and retrieved the handgun, which was loaded with three rounds of ammunition.

Mr. Cabral has an extensive criminal history: along with several misdemeanor convictions (some, but not all, juvenile offenses), he had previously been convicted of felony menacing with a weapon, possession of a controlled substance, and felony robbery. After the incident at the nightclub, the Government charged Mr. Cabral with a single count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Mr. Cabral pleaded guilty on March 28, 2018.

The Presentence Investigation Report recommended a within-Guidelines sentence of 42 months' imprisonment and three years' supervised release. The report also recommended that the district court order the standard conditions of supervised release, including Standard Condition Twelve ("the risk-notification condition"). This condition provides:

> If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify that person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

U.S.S.G. § 5D1.3(c)(12). Mr. Cabral filed an objection to the PSR's recommendation that the risk-notification condition be imposed, arguing the condition is vague, constitutes an unlawful occupational restriction,[1] and improperly delegates authority

---

[1] Mr. Cabral abandoned the occupational restriction argument on appeal, asserting only that Condition Twelve is unconstitutionally vague and is an improper delegation.

to a probation officer. At Mr. Cabral's sentencing hearing, the district court

expressed its concern about Mr. Cabral's history of violent crime and imposed the

risk-notification condition over Mr. Cabral's renewed objection. But rather than

providing guidance for narrow application of the condition, the sentencing court

justified the need for broad discretion in the probation officer when making the risk

assessment:[2]

> I don't care if I can't say what the risk is now. That's the whole point. I can't say what the risk is now. Any number of things can happen. There are some things that have happened now. There are things that could happen after he is convicted and sentenced by me. For example, and I am—to be clear I'm just making stuff up here. It could be that two years after he is sentenced by me, some DNA evidence shows that he involved [sic] in the perpetrator [sic] of a rape involving some victim, somewhere and he gets convicted for that. I can't sit here now, and predict or project that risk. It could be that he has a mental-health issue or a drug issue, that happens afterwards, while he is on supervised release, that creates a risk.
>
> The way this is being defined to me is that I, the all-powerful Judge, should be able to say exactly what risk is or is not worthy of requiring him to notify those affected by the risk, and it's absurd, because I can't anticipate every risk, and I am not going to sit here and pretend that I can.
>
> This is not a condition which is imposed and says based on—what has transpired, from today backwards, and only based on those things that are temporally current as of today, as defined and understood by me in matter X, Y, and Z without the prospect for further evidence coming along down the road, but based on that cabin, in the manner I just described, here are the people he presents them to, and here is—here are

---

[2] Mr. Cabral challenges the text of U.S.S.G. § 5D1.3(c)(12), as interpreted by the district court orally at sentencing. *United States v. Barwig*, 568 F.3d 852, 855 (10th Cir. 2009) ("an oral pronouncement of sentence from the bench controls over written language" (quotation marks and alteration omitted)); *see also United States v. Villano*, 816 F.2d 1448, 1451 (10th Cir. 1987) ("The sentence orally pronounced from the bench is the sentence."). Therefore, we quote at length the district court's description of the condition.

the things that you may, probation, tell him to notify people of. It's just nonsense.

ROA, vol. III at 60–61. The court rejected Mr. Cabral's vagueness challenge, reasoning that "there's nothing vague about [the condition]. Again, he is told to advise someone about the risk. He either does it or he doesn't." *Id.* at 63. And the sentencing court decided the term "risk" was not vague because it should be given its "ordinary meaning." *Id.* With respect to the improper-delegation argument, the court reasoned that "[t]his is a matter of supervision, and . . . supervision decisions are appropriate for the probation department. There is nothing here that even rationally says that I now could say what the risk is that presents . . . itself . . . in the future, and that I am in a better position to assess that risk today, not even knowing what it is, than the probation officer may be, once it presents itself." *Id.* at 63–64. Although the court tied the condition's enforcement to public safety, *see id.* at 62 ("Part of [the responsibility of the parole officer] is making sure that the public is protected, that's all that this is."), the court also acknowledged that the risk-notification provision "[c]ould affect girlfriends, family, living. It could, in theory, impact an occupation." *Id.* at 65.

The district court sentenced Mr. Cabral to 46 months' imprisonment, followed by three years' supervised release subject to all the standard supervised-release conditions, including Standard Condition Twelve—the risk-notification condition. Mr. Cabral timely appealed his sentence.

## II.    DISCUSSION

Mr. Cabral argues on appeal that the risk-notification condition is unconstitutionally vague.[3] He also argues the condition improperly delegates judicial power to a probation officer by allowing the probation officer to decide the scope of the "risk" that should trigger the notification requirement, thereby delegating the power to "decide the nature or extent of [Mr. Cabral's] punishment." Appellant's Op. Br. at 15 (quoting *United States v. White*, 782 F.3d 1118, 1141 (10th Cir. 2015)). Before we can reach the merits of Mr. Cabral's appeal, we first consider the government's contention that the challenge is not ripe for judicial review.[4]

---

[3] Citing our dicta in *United States v. Hull*, 893 F.3d 1221 (10th Cir. 2018), the Government contends that Mr. "Cabral's vagueness challenge is foreclosed by the Supreme Court's decision in *Beckles v. United States*," 137 S. Ct. 886 (2017). *See* Response Br. at 4. This is incorrect. In *Hull*, we mentioned the *Beckles* Court's conclusion that "the advisory Sentencing 'Guidelines are not subject to a vagueness challenge under the Due Process Clause' because . . . they only 'guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range.'" 893 F.3d 1221, 1224 n.1 (10th Cir. 2018) (quoting *Beckles*, 137 S. Ct. at 892). But *Beckles* simply held that a residual clause in the Guidelines identical to that struck down in *Johnson v. United States*, 135 S. Ct. 2551 (2015), could not similarly be void for vagueness because the Guidelines, which "merely guide the district courts' discretion, . . . are not amenable to a vagueness challenge." *Beckles*, 137 S. Ct. at 894. The Court never suggested that a defendant cannot challenge a supervised-release condition for vagueness where it is merely derived from the Guidelines.

[4] In *Hull*, we heard a challenge to Standard Condition Twelve on similar grounds to those Mr. Cabral raises, and we resolved that challenge on the merits without considering ripeness. 893 F.3d 1221, 1224–27 (10th Cir. 2018). However, neither party raised the issue of prudential ripeness in that case, *see id.*, and it is generally not our practice to raise the issue sua sponte, *see Fourth Corner Credit Union v. Fed. Reserve Bank of Kan. City*, 861 F.3d 1052, 1076 (10th Cir. 2017) (Bacharach, J., concurring).

## A. *Ripeness*

"We review the issue of ripeness de novo." *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1231 (10th Cir. 2001). The ripeness doctrine involves both constitutional requirements and prudential concerns. *See Tex. Brine Co. v. Occidental Chem. Corp.*, 879 F.3d 1224, 1229 (10th Cir. 2018). "The purpose of the ripeness doctrine is to prevent the premature adjudication of abstract claims." *Id.* Constitutional ripeness is based on Article III's requirement that federal courts hear only "[c]ases" and "[c]ontroversies." *See* U.S. Const. art. III, § 2; *see also Fourth Corner Credit Union v. Fed. Reserve Bank of Kan. City*, 861 F.3d 1052, 1059 (10th Cir. 2017). Because federal courts cannot give advisory opinions, the matter must come to the court in "clean-cut concrete form." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" (quoting *North Carolina v. Rice,* 404 U.S. 244, 246 (1971) (per curiam))).

Even when an appeal satisfies Article III's "case or controversy" requirement, we may still decline to review it under the prudential ripeness doctrine. Application of this doctrine turns on two factors: (1) "the fitness of the issue for judicial review," and (2) "the hardship to the parties from withholding review." *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016); *see also Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967). "As for whether the issue is fit for judicial review, we focus on whether the determination of the merits turns upon strictly legal

7

issues or requires facts that may not yet be sufficiently developed." *United States v. Ford*, 882 F.3d 1279, 1283 (10th Cir. 2018) (internal quotation marks omitted). Thus, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81 (1985)). As for the hardship to the parties from withholding review, we consider whether Mr. Cabral "face[s] a direct and immediate dilemma" arising from the supervised-release condition he is challenging. *Bennett*, 823 F.3d at at 1328 (internal quotation marks omitted).

Here, only prudential ripeness is at issue. Analyzing each of the prudential ripeness factors, we conclude Mr. Cabral's vagueness challenge is unripe but his improper-delegation challenge is ripe for review.

## 1. Ripeness of Mr. Cabral's Vagueness Challenge

Mr. Cabral alleges the risk-notification condition is unconstitutionally vague. Prudential ripeness prevents us from reaching this challenge both because it is presently unfit for judicial review and because Mr. Cabral will face little hardship if we decline to review it now.

First, it would be virtually impossible to resolve Mr. Cabral's vagueness challenge without factual development. The vagueness doctrine requires supervised release conditions to "be written so that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Llantada*, 815 F.3d 679, 683 (10th Cir. 2016)

8

(quotation marks omitted); *cf. City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (articulating standards for vagueness challenges). Applying these standards generally requires some factual context: in particular, information on what sort of conduct the provision was intended to regulate and how an officer might reasonably enforce the challenged provision. *See City of Chicago*, 527 U.S. at 63–64 (considering purpose of anti-loitering provision and discussing its "perverse consequence of excluding from its coverage much of the [gang-related] conduct that motivated its enactment"). Here, we do not know how (or even whether) the probation officer would choose to enforce the risk-notification condition. Absent such factual development, it is impossible for us to assess how the condition would be applied—or, indeed, even whether it would be applied—with sufficient particularity to determine whether it fails on either of these vagueness grounds.

Even if we could resolve this pre-enforcement challenge as a pure question of law, our precedent strongly disfavors deciding challenges to supervised-release conditions that might never be applied. The doctrine of prudential ripeness "prevent[s] courts from entangling themselves in [such] abstract disagreements" without concrete application to guide their analysis. *Utah Republican Party v. Cox*, 892 F.3d 1066, 1092 (10th Cir. 2018) (quotation marks omitted). Even assuming a condition is facially problematic, "the mere existence" of a provision such as the risk-notification condition "is ordinarily not enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him." *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (quoting *Nat'l*

9

*Student Ass'n v. Hershey*, 412 F.2d 1103, 1110 (D.C. Cir. 1969)). Because the scenarios Mr. Cabral alludes to "may not occur as anticipated, or indeed may not occur at all," depending on the probation officer's future decisions, this challenge is not yet fit for judicial review. *Texas*, 523 U.S. at 300 (quoting *Thomas*, 473 U.S. at 580–81)); *cf. Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) ("[A] regulation is not ordinarily considered . . . 'ripe' for judicial review . . . until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990))).

*United States v. Ford* demonstrates this rule's application in the supervised-release context. *Ford*, 882 F.3d at 1283. The defendant in that case challenged, in relevant part, a "condition requiring him to submit to a polygraph examination if directed to do so by his probation officer or treatment provider." *Id.* We held the challenge was unripe, reasoning: "When a condition of supervised release is, by its own terms, contingent on the decision of a different actor, that condition is not ripe for immediate review." *Id.* at 1286. We explained that "the condition that [the defendant] submit to polygraph testing is only required if (1) treatment is recommended in the sex-offense-specific assessment [the defendant would be required to take] and (2) polygraph testing in particular is directed by the probation officer and/or treatment provider." *Id.* (internal quotation marks omitted). Likewise, in *United States v. Bennett*, we held a challenge to a plethysmograph testing

10

condition unripe where a "treatment provider must evaluate [the defendant] and find that testing is appropriate" before testing could be imposed. 823 F.3d at 1327.[5] In sum, the first prudential-ripeness factor weighs against review because the risk-notification condition, contingent as it is upon a third party's decision, implicates myriad circumstances that may never occur or, if they occur, could trigger different legal concerns.

The second prudential ripeness factor, hardship to the parties, also weighs against review of the vagueness challenge. Mr. Cabral's risk-notification obligation—and thus, the "dilemma" whether to comply or challenge that obligation in court—arises only if his probation officer directs him to notify someone. Thus,

---

[5] Several of our sister circuits have adopted similar rules. *See, e.g.*, *United States v. Magana*, 837 F.3d 457, 459 (5th Cir. 2016) ("An appeal . . . is not ripe if it is 'a matter of conjecture' whether the requirements of the condition will take effect." (quoting *United States v. Carmichael*, 343 F.3d 756, 761–62 (5th Cir. 2003))); *United States v. Rhodes*, 552 F.3d 624, 629 (7th Cir. 2009) (collecting cases) (describing ripeness inquiry in challenges to supervised-release conditions as turning on whether a condition is "determinate" or depends on "a string of contingencies"); *United States v. Lee*, 502 F.3d 447, 448, 450 (6th Cir. 2007) (condition requiring participation "in a specialized sex offender treatment program that may include the use of plethysmograph or polygraph" is unripe because "we have no idea whether the Probation Office will determine that such treatment will be necessary"); *but see United States v. Rock*, 863 F.3d 827, 833 n.1 (D.C. Cir. 2017) (rejecting government's ripeness argument in plethysmograph challenge, reasoning "supervisory conditions are ordinarily ripe for challenge upon imposition" and "this court's ruling will provide [defendant] with 'an immediate, concrete, and valuable benefit: certainty' regarding whether he will have to face such testing" (quoting *VanderKam v. VanderKam*, 776 F.3d 883, 889 (D.C. Cir. 2015))); *United States v. Weber*, 451 F.3d 552, 556–57 (9th Cir. 2006) (entertaining challenge to plethysmograph condition even though "it is not certain that [defendant] will ever be ordered to" undergo such testing because "[a] term of supervised release, even if contingent, is part and parcel of the defendant's sentence and can be challenged on direct appeal").

Mr. Cabral does not currently face the sort of "direct and immediate dilemma" that would support judicial review. To be sure, the risk-notification condition as imposed by the district court vests Mr. Cabral's probation officer with exceptionally broad power, and Mr. Cabral convincingly articulates hypothetical scenarios in which his probation officer *could* use that broad power to infringe on Mr. Cabral's rights. But, as the Government observes, these scenarios "ha[ve] not yet occurred (and may never occur)." Response Br. at 8 (quoting *United States v. Davis*, 242 F.3d 49, 52 (1st Cir. 2001)). If Mr. Cabral's probation officer never invokes the risk-notification condition, then Mr. Cabral will never experience any hardship from the condition, whether or not we reach the merits of his challenge. "When a condition of supervised release is, by its own terms, contingent on the decision of a different actor," *Ford*'s holding is unequivocal: "that condition is not ripe for immediate review." 882 F.3d at 1286. This holds true even if the *potential* hardship is significant, and even if the challenge could theoretically be analyzed without waiting for its application. *See id.* at 1286–87.

Mr. Cabral observes that if we decline to review his challenge now and the probation officer *does* invoke the condition, he would have only two ways to challenge it. First, he could move for modification of the condition under 18 U.S.C. § 3583(e), but he would be left to do so without the benefit of appointed counsel. Second, he could simply violate the condition and "risk re-incarceration." Appellant's Reply Br. at 9 (quoting *Ford*, 882 F.3d at 1284). It is true that, assuming the probation officer invokes the risk-notification condition, Mr. Cabral would suffer

12

a burden from the lack of appointed counsel to challenge the condition. But we identified a similar burden in *Ford*, and we still withheld review under the prudential ripeness doctrine as to the polygraph condition that would be imposed only upon the future decision of a medical provider. *Ford*, 882 F.3d at 1284 ("But to challenge the condition by violating it would risk re-incarceration. And a request to modify the condition—unlike this direct appeal—will require he proceed pro se or retain an attorney near the end of his incarceration . . . ."). Because neither prudential ripeness factor supports immediate review, we decline to consider Mr. Cabral's vagueness challenge on the merits.

## 2. Ripeness of Mr. Cabral's Improper-Delegation Challenge

Unlike his vagueness challenge, Mr. Cabral's improper-delegation challenge is presently ripe for review. First, the challenge is fit for judicial resolution because it presents "a legal [question] that can be easily resolved" without additional factual development. *Ford*, 882 F.3d at 1284 (quotation marks omitted). In *Ford*, the challenged condition would be triggered, and therefore would implicate the defendant's constitutional rights, only in the event a medical provider recommended polygraph testing. *Id.* at 1283. Here, by contrast, Mr. Cabral is challenging the already-realized delegation of judicial power to a probation officer, not merely some hypothetical future violation that delegation might allow. Contrary to the Government's assertion, we need not "adjudicate hypothetical scenarios" to resolve this challenge." Response Br. at 8. The district court's delegation to the probation officer occurred at the moment the district court tasked the probation officer with

13

assessing Mr. Cabral's risk and did so without any meaningful direction. That delegation was either proper or not—and its propriety does not depend on how (or even whether) the probation officer might later choose to wield the delegated power. Thus, the question whether the risk notification condition improperly delegated judicial power is presently fit for judicial review.

The burden Mr. Cabral would face if we do not consider his challenge now weighs at least slightly in favor of review. As explained above, the probation officer might never invoke the risk-notification condition, and so Mr. Cabral might never experience any hardship stemming from the alleged improper delegation. But, as with Mr. Cabral's vagueness challenge, if we do not decide his improper-delegation challenge now and the probation officer later invokes the risk-notification condition, Mr. Cabral could challenge it only without the benefit of appointed counsel or "risk re-incarceration" by violating the condition. *Ford*, 882 F.3d at 1284. This dilemma, although still only potential, would certainly place a heavier burden on Mr. Cabral than if we entertained his challenge on direct appeal, while he is represented by appointed counsel. To be sure, this potential hardship alone would not justify review where contingency on a third party's decision hampers meaningful judicial resolution of the issue in a factual vacuum, as with Mr. Cabral's vagueness challenge. *See id.* at 1284. But given that *Ford* is distinguishable in the case of a pure improper-delegation challenge, the prospect that Mr. Cabral would otherwise have to retain private counsel or proceed pro se to challenge the condition further supports our immediate review of his challenge, with the benefit (to him and to us) of counsel's briefing. *See*

14

*United States v. White*, 244 F.3d 1199, 1204 (10th Cir. 2001) (court's "interest in judicial efficiency" impacts prudential ripeness analysis). Because Mr. Cabral's improper delegation challenge is ripe for review, we now proceed to consider that challenge on the merits.

## B. *Improper Delegation*

"We review constitutional non-delegation challenges to conditions of supervised release de novo." *United States v. Ullmann*, 788 F.3d 1260, 1264 (10th Cir. 2015). "Article III of the United States Constitution confers the authority to impose punishment on the judiciary, and the judiciary may not delegate that authority to a nonjudicial officer." *United States v. Bear*, 769 F.3d 1221, 1230 (10th Cir. 2014). Mr. Cabral argues the risk-notification condition improperly delegates the power to define the term "risk"—and thus "to determine what conduct the condition proscribes, and when it will be enforced"—without meaningful guidance from the district court. Appellant's Op. Br. at 14–15.

In an improper-delegation challenge to a supervised-release condition, "we distinguish between permissible delegations that merely task the probation officer with performing ministerial or support services related to the punishment imposed and impermissible delegations that allow the officer to decide the nature or extent of the defendant's punishment." *Bear*, 769 F.3d at 1230 (quotation marks omitted). This inquiry turns "on the liberty interest affected by the probation officer's discretion." *Id.* Thus, "allowing a probation officer to make the decision to restrict a defendant's significant liberty interest constitutes an improper delegation of the judicial authority

15

to determine the nature and extent of a defendant's punishment." *Id.* By tasking Mr. Cabral's probation officer with determining whether Mr. Cabral poses a "risk" to others in any facet of his life and requiring Mr. Cabral to comply with any order to notify someone of any such risk, the district court delegated broad decision-making authority to the probation officer that could implicate a variety of liberty interests.

To be sure, we try to interpret "open-ended" supervised release conditions such that they comply with the law. *United States v. Mike*, 632 F.3d 686, 696 (10th Cir. 2011). Thus, "where a broad condition of supervised release is ambiguous and could be read as restricting a significant liberty interest, we construe the condition narrowly so as to avoid affecting that significant liberty interest." *Bear*, 769 F.3d at 1230–31 (interpreting a condition not to delegate authority to impose invasive medical and psychiatric treatments because such a condition would implicate liberty interests). But here, we cannot help construing the risk-notification condition as granting the probation officer broad discretion to make decisions implicating Mr. Cabral's liberty interests. First, it would be impossible for us to cabin the condition without contradicting the express language of the district court *refusing* to limit its scope. *See* ROA, vol. III at 60 ("I don't care if I can't say what the risk is now. That's the whole point."); *see also id.* at 61 (repudiating notion that risk assessment depends only on "what has transpired, from today backwards, and only based on those things that are temporally current as of today, as defined and understood by me in matter X, Y, and Z"). Second, given the district court's wide-ranging speculation about how the risk-notification condition might apply to "any number of things,"

16

from a future "mental-health issue" or "drug issue" to a hypothetical future rape investigation, it would be impossible for us to delineate all the ways in which the condition may or may not be permissibly enforced. *See id.* at 61. Unlike *Bear*, where it was clear how the challenged condition might infringe on a liberty interest, *see* 769 F.3d at 1230–31, the district court here emphatically opened the door to boundless scenarios implicating various liberty interests.

As the district court observed, the condition could implicate a multitude of liberty interests, depending on how it is enforced: it "[c]ould affect girlfriends, family, living. It could, in theory, impact an occupation." ROA, vol. III at 65. In the interest of providing some guidance on remand, we will elaborate on some (though certainly not all) of the ways in which the risk-notification condition implicates Mr. Cabral's liberty interests and therefore improperly delegates judicial power to the probation officer.

If Mr. Cabral's probation officer orders him to notify family members that he poses a risk to them, the condition may infringe on his "fundamental right of familial association." *United States v. Lonjose*, 663 F.3d 1292, 1303 (10th Cir. 2011). "Where a condition of supervised release interferes with that right, compelling circumstances must be present to justify the condition." *Id.*; *see also Bear*, 769 F.3d at 1229 ("Given the importance of this liberty interest, . . . conditions that interfere with the right of familial association can do so only in compelling circumstances, and it is imperative that any such restriction be especially fine-tuned to achieve the statutory purposes of sentencing." (quotation marks and citations omitted)).

17

Similarly, Mr. Cabral's probation officer might order him to warn an employer or prospective employer about a perceived risk unrelated to the offense of conviction—relying, as the probation officer reasonably might, on the district court's emphatic refusal to "cabin" the condition to "things that are temporally current as of" Mr. Cabral's conviction. ROA, vol. III at 61. This could be an impermissible occupational restriction, depending upon the circumstances. *See Mike*, 632 F.3d at 698 (striking down third-party notification condition to the extent it "requires [defendant] to notify potential employers . . . about his criminal convictions" because "such notification constitutes an occupational restriction and the court did not make the findings required by law"); *see also* U.S.S.G. § 5F1.5(a)(1)–(2) (allowing occupational restrictions only where district court makes specific findings linking defendant's occupation to "the conduct relevant to the offense of conviction" and establishing that such a restriction is "reasonably necessary to protect the public").[6] And we have repeatedly held that occupational restrictions implicate liberty interests. *See, e.g.*, *Stidham v. Peace Officer Standards And Training*, 265 F.3d 1144, 1153 (10th Cir. 2001).

Because the risk-notification condition, as imposed by the district court, grants Mr. Cabral's probation officer decision-making authority that could infringe on a

---

[6] Although Mr. Cabral claimed in the district court that Standard Condition Twelve was an improper occupational restriction, he has not made that argument on appeal, or even referred to U.S.S.G. § 5F1.5(a) (requiring special findings of fact to support occupational restrictions). Nonetheless, a probation officer's future interpretation of the risk-notification condition may raise such concerns.

18

wide variety of liberty interests, it is an improper delegation of judicial power. Therefore, we vacate Mr. Cabral's sentence and remand to the district court for resentencing.

## III. CONCLUSION

For the foregoing reasons, we DISMISS Mr. Cabral's vagueness challenge as prudentially unripe, but we reach the merits of his improper delegation claim, and we VACATE Mr. Cabral's sentence and remand to the district court for resentencing consistent with our decision.